CHARLES ARMSTEAD v. THE STATE.

No. 3024.  Decided May 24, 1905.

1.—Theft of Hog—Circumstantial Evidence—Charge of Court.

Where the case is one of possession of property recently stolen, it is one of circumstantial evidence, and a charge on that character of evidence must be submitted.

**2.—Same—Principals—Charge of Court.**

Where the case was one of circumstantial evidence of theft of a hog, a charge on principals to the effect that it was not necessary that all the persons acting together were in fact all actually bodily present on the ground when the offense was actually committed was error. The statute defining principals requires the presence of all the parties acting as such at the time of the commission of the offense, that is the original taking.

**3.—Same—Ownership—Charge of Court.**

Where in a case of hog-theft the evidence was not clear or satisfactory that the question of identity and ownership was narrowed down to the fact as to whether the hog belonged to defendant or the prosecutor, it was error to charge that the jury should acquit if they had a reasonable doubt as to which of the two was the owner, as the prosecution failed if the property was that of a third party, other than the alleged owner.

**4.—Same—Threat of Prosecution—Confession—Evidence.**

Where the prosecutor threatened a prosecution if he was not paid for the hog alleged to have been stolen, evidence that the price of the hog was paid in corn was inadmissible as a confession of defendant's guilt, as the payment of the corn was in response to the threat and to avoid a prosecution.

**5.—Same—Impeaching and Original Testimony—Verbal Instruction—Weight of the Evidence.**

Where the testimony of the prosecuting witness in a case of hog-theft was that when he asked the defendant and his codefendants where the head of the hog was that one of defendant's codefendants replied he ate it to keep it from spoiling, and defendant's testimony showed that in this same conversation he and his codefendants had offered to take the prosecutor to a place different from that where they were charged to have killed the hog, to show that they had killed the hog where they were going to take prosecutor and also take him to the house and show him the head of the hog, which he declined, and denied on the stand that such conversation had occurred, it was error on part of the court to say to the jury that he admitted testimony only as impeaching testimony as otherwise it was self-serving, as this was original testimony and besides flatly contradicted prosecuting witness. Such verbal instruction was on the weight of the evidence.

Appeal from the District Court of Walker. Tried below before Hon. Gordon Boone.

Appeal from a conviction of theft of a hog; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Dean, Humphreys* and *Powell,* for appellant.—On the question of circumstantial evidence and a charge thereon: Hyden v. State, 31 Texas Crim. Rep., 401; Willard v. State, 26 Texas Crim. App., 126.

*Howard Martin,* Assistant Attorney-General, for the State.—Summers v. State, 8 Texas Ct. Rep., 558; Guerrero v. State, 10 id., 587.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of the theft of a hog, and his punishment fixed at two years in the penitentiary:

It is insisted the court erred in not only failing to charge the law applicable to a case of circumstantial evidence, but also in refusing to give a requested instruction submitting this theory of the law. This is a case of circumstantial evidence. The son of the alleged owner testi-

Vol. 48 Crim.—20.

fied that he found appellant Merl Armstead and John Coffee in possession of a dead hog on Sunday evening; which he subsequently identified as one that belonged to his father Dan Perkins. He describes the place and location where he saw them in possession of it. When, where or how they got possession is not shown. In other words, it is a case, as made by this witness, of the possession of property alleged to have been stolen. Under all the authorities this makes a case of circumstantial evidence.

The court gave the following charge on principals: "You are instructed that all persons are principals who are guilty of acting together in the commission of an offense. When an offense has been actually committed by one or more persons, the true criterion for determining who are principals is, did the parties act together in the commission of the offense; was the act done in pursuance of a common intent and in pursuance of a previously formed design in which the minds of all united and concurred: if so, then the law is that all are alike guilty, provided the offense was actually committed during the existence and in the execution of the common design and intent of all, whether in point of fact all were actually bodily present on the ground when the offense was actually committed, or not." As before stated this being a case of circumstantial evidence, this charge was error. If there had been no question of the fact that all the parties were concerned in the original taking, being present and aiding, this charge would not have been of sufficient error to reverse the judgment. Unless the evidence is clear and conclusive of the presence of all the parties at the time of the commission of the offense; that is, the original taking under our statutes defining principals, then such a charge as this is reversible error. The mere fact of the possession of the property that may have been stolen, does not necessarily make the parties principals, where there may be more than one found in possession. One may have taken the animal or property, and the other joined in the disposition of it, or in the handling or carrying it away. This would put him in the role of a receiver. This charge has been so often condemned that we deem it unnecessary to refer to the authorities.

The following excerpt from the charge is criticised: "If from the evidence you shall have a reasonable doubt as to the ownership of the hog alleged to have been taken, that is as to whether said hog was the property of Dan Perkins or the property of the defendant, Charles Armstead, you will give the defendant the benefit of such doubt and will acquit him." A counter charge was asked, as follows: "You are instructed that the burden of proof is upon the State to show by competent evidence beyond a reasonable doubt, that the identity of the property alleged to have been stolen as alleged in the indictment, and unless the State has shown by competent evidence beyond a reasonable doubt that said property, if taken, was the property of Dan Perkins, you will acquit the defendant." We believe the court's charge in this respect was error in confining the question of identity in the alternative, as

between the ownership of defendant and the alleged owner. The testimony leaves it somwhat in doubt, if not sharply so, that the hog taken was the property of Dan Perkins, although the son of the alleged owner testified to its identity by the mark. If the hog belonged to any one other than Dan Perkins, the State has no case; and appellant should have had the benefit of the doubt, whether it belonged to Dan Perkins or some one else. Of course, if the question of identity was narrowed down simply to whether it belonged to appellant or Dan Perkins, there would have been no error; but the testimony is not clear or satisfactory on this point. The son of appellant testified to the identity of the hog and the place where he saw appellant and his codefendants in possession of it. This was on Sunday evening. On Monday morning Perkins, the alleged owner, and the boy who stated he saw these parties in possession of the hog, with Haynes and Davis, went to the place and examined for evidence of where the hog had been killed, and found none. There was nothing indicating that the hog had been dragged or had lain upon the ground. Easter Perkins testified that she was the wife of Dan Perkins, and the mother of the main State's witness; that they had a sow with three pigs; that the pigs were raised pets. Dan testified that the sow had six pigs; and the boy testified there were eight pigs. Easter testified that there were only two left after the one was missing; Dan testified there were five; and the other boy testified to the loss of one. These facts and circumstances taken in connection with the failure to find any evidence where the hog had been killed or dragged, or made any impression upon the ground, tends to render it improbable that the boy's testimony was true as to having identified the hog at the place and saw defendant in possession of it. On another trial the charge should not limit the ownership between Dan Perkins and defendant. If any one other than Dan Perkins owned the hog, defendant should have the benefit of the doubt, and the State would have no case under the allegations in the indictment.

On the morning after the alleged theft, appellant John Coffee and Merl Armstead were at the residence of Dan Perkins, and investigated the locality that Dan's son had testified the hog was killed. It seems that just after this they went to Dan's residence, and there he informed them that, unless they paid him for the hog he intended to indict and prosecute. He wanted $3, and John Coffee was only willing to pay $2.50. One of them was crying, but which is not stated. Merl Armstead took Easter Perkins off and made a trade with her, by which the value of the hog was to be received in corn. This trade was carried out, and six bushels of corn delivered in payment. It was urged that this testimony was inadmissible. We believe this contention is well taken. Cook v. State, 32 Texas Crim. Rep., 27. It occurs to us that this could be used only as being in the nature of a confession, and was a reply to the threat to indict as a means of avoiding a prosecution. Taken in view of the testimony in this record, we do not believe this

should operate as a confession against the parties under the circumstances. It is evident from the record and the bills of exception that this would not have occurred but for the threat of Dan Perkins to prosecute, and it was to avoid this prosecution in the courts that the agreement was made.

Another bill of exceptions is reserved to the action of the court which limited verbally the effect of certain statements made by defendant and his codefendants at the time they were investigating the locality where the hog was said to have been killed on the previous Sunday evening. Dan Perkins testified: "He had never seen the hog since that day. It was a pet hog running around the house. I counted the hogs, and I said, 'there ought to be six; and there ain't but five;' and I told the boys, 'if I tell you a lie, you can indict me for slander.' There was nothing said to me about going to see the hog or meat. I said, 'Where is the head at?' Jno. Coffee said, 'He ate the head, because he was afraid it would spoil.' Charles Armstead and Merl Armstead were there when I asked about the head—all three of them were there. I had six hogs in the bunch; they were all about the same age. Five of the bunch came up, and the sixth hog didn't come up." Frank Davis testified that he was at the place where they were investigating the ground, hunting for evidence of where the hog had been killed, and he was asked with reference to the conversations occurring there. The record shows in this connection, as follows: "Mr. Dashiell objected to the following question being asked the witness: 'While you were there, I will ask you if Chas. Armstead the defendant said to Dan Perkins that the hog they had killed—he and Jno. Coffee and Merl Armstead had killed—didn't he say they had killed it by Ash Pond near Wright's Creek, and didn't he ask him to go there where the place was and where the hog had been killed?'" Dan Perkins denied this, and the court admitted the evidence solely for the purpose of impeaching the witness Dan Perkins, and excepted to the court's instructions to the jury, for the reason that it was prejudicial to the rights of the defendant for the court to remark to the jury, that the court would not allow the testimony as a self-serving declaration to the defendant. The witness further testified that Chas. and Merl Armstead and John Coffee made that proposition to Dan Perkins, and that Dan Perkins declined to go. The court then remarked, "I will admit the following testimony, as I did awhile ago, for the purpose of contradicting the witness Dan Perkins, with the same instruction to the jury. John Coffee proposed to Dan Perkins to take him to his house and bring him the head and the ears of the hog so he could see and know whose hog it was." Dan Perkins declined to go. This conversation occurred near where the parties were searching the ground for evidence of where the State claimed they had killed the hog on the Sunday evening previous. We believe this testimony should have been admitted as original testimony. The State had proved by Dan Perkins that John Coffee had stated to him that he had cooked and eaten the head, because he

was afraid it would spoil. This was a part and parcel of the same conversation occurring at the same time. The witness gives a different version of that conversation, and shows that Coffee proposed to Dan Perkins, the alleged owner, to go with him, and he would show him the head of the hog. They denied having killed the hog at this particular point, and further, that they wanted to go to the point indicated at Ash Pond on Wright's Creek, and show where they killed the hog they did in fact kill. This was clearly part and parcel of the same conversation, and it is equally as clear that it was original testimony as the conversation testified by Dan Perkins to wit: that Coffee had stated they had cooked and eaten the head of the hog. Or taking another view: If as a matter of fact the conversation detailed by Dan Perkins did not occur, and that the conversation detailed by Davis did, then it was a flat contradiction between the parties as to what the conversation was. And if the conversation detailed by Perkins was original testimony, then clearly the other was. It is a different version of the transaction, and while it was in its nature impeaching, because it contradicted Dan Perkins and gave an entirely different statement as to what did occur, it was nevertheless original testimony and should have been admitted, and the court was in error in instructing the jury verbally that it was impeaching and self-serving. This was a direct comment upon the weight of the testimony.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*