# DECEMBER, 1919.

---

T. E. MIDDLETON, alias T. E. LEWIS, alias BLACKIE LEWIS v. THE STATE.

No. 5471. Decided December 2, 1919.

Rehearing denied February 4, 1920.

**1.—Murder—Death Penalty—Sufficiency of the Evidence.**

Where, upon trial of murder and a conviction of that offense, inflicting the death penalty, the evidence sustained a conviction under a proper charge of the court, there was no reversible error.

**2.—Same—Accomplice—Charge of Court—Words and Phrases.**

Where, upon trial of murder, the court in his charge on accomplice testimony instructed the jury that there must be other evidence than that of the accomplice tending to connect the accused with the offense charged, there was no reversible error, as the words, "tending to connect" are not used as referring to the accomplice's testimony, but to the corroborated testimony.

**3.—Same—Evidence—Accomplice—County Jail—Practice in District Court.**

Where defendant complained that the accomplice who turned State's evidence was brought from the county jail to testify and was therefore under intimidation, but the record showed that there was no statutory affidavit for severance and no tenable objection made before this witness testified, there was no error in overruling the objection, it appearing from the record that the case against the accomplice had been dismissed.

**4.—Same—Charge of Court—Bill of Exceptions.**

Where the bill of exceptions presented all of the exceptions to the court's charge, none of which pointed out specifically by quotation or paragraph, the error complained of, it need not be reviewed, besides, there was no reversible error.

**5.—Same—Charge of Court—Principal Offender.**

Upon trial of murder, the court did not err in instructing the jury that one may be a principal offender who is not bodily present when the offense is committed, as this is in accord with the statute and decisions.

**6.—Same—Principals—Charge of Court.**

Where, upon trial of murder, the evidence raised the issue of principals, the court properly submitted a charge thereon.

### 7.—Same—Accomplice—Principals—Rule Stated.

An accomplice is one who has completed his offense before the crime is actually committed, and whose liability therefor is depending upon his previous acts in connection therewith, and in determining the question as to the attitude of one whose connection is shown both by the testimony of the accomplice and the attendant circumstances to have existed before and after the commission of the crime, we may look to the rule above mentioned in determining who are accomplices, and who are principals. Following: Cook v. State, 14 Texas Crim. App., 96, and other cases.

### 8.—Same—Principal—Bodily Presence—Case Stated—Removing Witness.

Referring to the contention of defendant that one cannot be a principal who is not bodily present at the time of the commission of the offense, it may be remarked that it is seriously questionable under this record whether defendant was absent from the scene at the time of the killing; besides, one who purposely removes a possible or probable witness for the purpose of preventing said witness from witnessing the proposed crime is within the definition of principal, and this question is one of fact for the jury in the instant case.

### 9.—Same—Accomplice—Corroboration—Rule Stated—Charge of Court—Principal.

It is not necessary, under the authorities, to corroborate an accomplice's entire narrative, nor all of his testimony, and moreover, where the evidence showed a conspiracy between the accomplice and defendant, the acts of each in furtherance of a common design, as long as the same continued, were the acts of both and each would be a principal in any crime committed in the execution of such design; besides, there was no exception to the manner of the submission of the court's charge on principal.

### 10.—Same—Evidence—Identification of Deceased—Clothes.

Upon trial of murder, when the remains of the deceased were identified by the skeleton, clothes, hair, etc., all of which were found under the direction of the accomplice and identified as those of the deceased, there was no error to exhibit her clothing before the jury, as the identification of the deceased was one of the issues; nor was it error to admit testimony as to these items of bones, hair, etc., because they were not positively identified.

### 11.—Same—Grand Juror—Evidence—Allegation—Proof—Means Used.

Where, upon trial of murder, it was alleged in the indictment that the grand jury did not know the means by which deceased was killed, there was no error to permit the foreman of the grand jury to testify about the efforts made by the grand jury to ascertain such means, and their inability to do so, in connection with the exhibition before the jury of a hammer and hatchet found in the car of deceased after her death.

### 12.—Same—Rehearing—Charge of Court—Rule Stated—Bills of Exception.

Under the statutes a charge of the court must be excepted to in due time so that the supposed errors which are pointed out may be corrected, etc., and a failure to so except is held to cure all errors in the charge not fundamental; which rule was not observed in the instant case; however, in consideration of the severe penalty inflicted they will be considered.

### 13.—Same—Charge of Court—Principals—Bodily Presence of the Accused—Rule State.

Where, upon trial of murder, the evidence raised the issue of principals and the court instructed the jury that all persons are principals

who are guilty of acting together in the commission of an offense, and that when an offense has been actually committed by one or more persons the true criterion for determing who are principals, is, did the parties act together in the commission of the offense; was the act done in pursuance of a common intent in pursuance of a previously formed design in which the mind of all united and concurred? if so, then the law is, that all are alike guilty; provided the offense was actually committed during the existence and in the execution of the common design and intent of all, whether in point of fact all were actually, bodily present on the ground when the offense was actually committed or not, and applying this law to the facts of the case, there was no reversible error. Following: Bean v. State, 17 Texas Crim. App., 60, and other cases overruling: Yates v. State, 42 S. W. Rep., 296, and other cases; distinguishing: Dawson v. State, 41 S. W. Rep., 599.

#### 14.—Same—Principals—Accomplices—Line of Cleavage.

In every case, no matter what phase of the law is involved, the evidence must show, and the charge of the trial court submit, that at the time of the commission of the offense the parties must be acting together, each doing some part in the execution of the common purpose in order to make him a principal, and just there lies the line of cleavage between accomplices and principals, under articles 74. 76, 78 Penal Code. Following: Cook v. State, 14 Texas Crim. Rep., 96, and where the court's charge on principals, as applied to the facts in the instant case, followed this rule there was no reversible error, besides, in the instant case the defendant was either secreted near by the scene viewing the crime he had advised and therefore present or endeavoring to secure the safety and concealment of his coprincipal.

#### 15.—Same—Evidence—Bill of Exceptions—Grand Juror—Indictment.

A general objection to the testimony of the witness, a part of which is material and competent, will not avail in this court; besides, the evidence to which objection was made was admissible as the indictment alleged that the means or instruments used in the commission of the homicide were unknown to the grand jury and it therefore became material to show that fact by the foreman of the grand jury.

Appeal from the District Court of Liberty.   Tried below before the Hon. J. L. Manry, judge.

Appeal from a conviction murder; penalty, death.

The opinion states the case.

*C. F. Stevens* and *W. T. Norman,* for appellant.—On question of court's charge on principals.   Wright v. State, 48 S. W. Rep., 1919, and cases cited in the opinion.

On question of bill of exceptions: National Bank of Mt. Pleasant, Iowa, v. Ricketts, 177 S. W. Rep., 1028;

On question of admitting testimony of foreman of grand jury: Bennett v. State, 39 Texas Crim. Rep., 639; Ratliff v. State, 49 S. W Rep., 583; Willis v. State, 49 Texas Crim. Rep., 139; Richardson v. State, 49 id., 391; Monk v. State, 27 Texas Crim. App., 450.

*C. M. Cureton,* Attorney General, *E. F. Smith,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—In this case appellant was convicted of the murder of Mrs. Mary Lewis, in the District Court of Liberty County, and his punishment fixed at death.

Without going into the sickening details of this case, which show, without controversy, that a helpless woman was knocked in the head and killed by those for whom she had cared and provided; we make this brief statement of the facts:

. The evidence is sufficient to show that deceased came to her death as the result of the criminal agency of another, and that appellant was connected with the killing, either as accomplice or a principal.

One Robert Osment testified, under agreement with the State, that he actually committed the homicide, but that appellant had carried the eleven year old child of the deceased away from the scene of the killing, to keep her from being a witness thereto and prevent the necessity of killing her also; and that the killing was in pursuance of an agreement so to do, and for the purpose of getting the money of deceased, both what she had on her person and in the bank, and the payments of a continuous income, which was hers from various sources.

Nothing in the record discloses any act or word of deceased showing enmity toward either appellant or Osment, or that the motive for the killing was other than the removal of an obstacle which stood between them and the getting of her money.

According to the story of this accomplice, after his victim was killed by repeated blows on the head from a hammer, he got a money-belt off her body, which he gave to appellant; they left the community together the next day in the automobile of deceased; both of them told other parties before leaving, that Oklahoma officers had come and gotten deceased; appellant claimed that she and they would be back shortly; he sold hogs belonging to her, and collected money for them. Soon after her death he began forging checks on her bank account, upon which he got the money; later, and just before the return of the indictments against him and Osment, he stated that deceased was in Kansas City, and would be down in that community the following spring. Appellant placed no witnesses on the stand.

An examination of the record shows that the first error complained of by appellant, is that the charge on accomplice testimony is not correct, in that it instructs the jury that there must be other evidence than that of the accomplice *tending to connect* the accused with the offense charged. This charge was correct. See Branch's Ann. Penal Code, Vol. 1, Sec. 710. The words "tending to connect" are not used as referring to the accomplice's testimony, but to the corroborative testimony.

Appellant reserved three bills of exeption, which appear in the record. The first bill complains that the accomplice witness, the man Osment, who turned States evidence, was brought from the county jail to testify, and was, therefore, under intimidation and

could not testify freely, and after he had been permitted to testify, the court overruled appellant's motion to strike out his testimony on the ground that he was the perpetrator of the crime, and his case had been dismissed, but that he had not been released from custody. There is nothing in the record to show any statutory affidavit for severance, and no tenable objection made before this witness testified. The fact that he was brought from the jail would be no valid ground of objection. It would in no event be sufficient for appellant to make a motion to strike out the objectionable testimony of a witness, upon grounds not presented when the witness offered to testify, and there was no error in overruling the objection made, or in refusing appellant's motion. There is nothing apparent in the record showing any intimidation of the witness, or any refusal to testify fully to any questions asked him upon either direct or cross-examination. It appears from the record that the case against this witness had been dismissed.

Appellant's next bill of exceptions present all of the exceptions taken to the court's charge, none of which point out specifically, by quotation or paragraph, the errors comlained of, but in view of the seriousness of the case, and the gravity of the punishment we have considered the matters contained in said exception. It is complained that the court erred in telling the jury that one may be a principal offender, who is not bodily present when the offense is committed. This was not error, as it is in accord with our statutes and decisions that one may be a principal who is not present in person. See Branch's Ann. Penal Code, Arts. 76, 77, and 78, and authorities cited. Again, said charge is excepted to for submitting to the jury the law of principals, it being contended that there was no evidence justifying the same. We cannot agree with this contention. It has been held in this State that an accomplice is one who has completed his offense before the crime is actually committed, and whose liability therefor is dependent on his previous acts in connection therewith. Cook v. State, 14 Tex. Crim. App., 96; Bean v. State, 17 Tex. Crim .App., 61; so that in arriving at a determination of the question as to the attitude of one whose connection is shown both by the testimony of the accomplice and the attendant circumstances, to have existed before and after the commission of the crime under investigation, we might look to the rule mentioned for determining who are accomplices.

Referring to the contention of appellant that one cannot be a principal who is not bodily present at the time of the ommission of the offense, we might remark that it is seriously questionable under this record, whether appellant was absent from the scene at the time of the killing. The accomplice testified in detail to extended and continuous conversations with appellant prior to the killing, in which there was a growing insistence on the part of appellant that Osment kill deceased, in order that they might get her money, and that it was finally agreed that Osment should kill her

the day prior to that of the actual homicide; and that on that day Osment took deceased in the automobile and carried her out in the bottom, away from the camp, with the intention of killing her, but his heart or nerve failed him, and he brought her back to camp alive. He testified that appellant cursed him and abused him for not killing her that day, and told him that he must kill her the next day, or some one would not leave the river bottom alive. He also said that appellant told him in detail how to kill her, and what to do with the body, etc.

The evidence shows that the next day, the same being the 16th of August, at about three o'clock in the afternoon, appellant, (who went by the name of T. E. or "Blackie" Lewis, and was known in the community as the son of deceased) and the little girl Violet Lewis, carried Osment and the deceased in a skiff from the house-boat occupied by the entire party, to the bank of the river. The automobile of deceased was on the river bank. Appellant and the little girl did not go up the bank to the automobile, but Osment and deceased did. We quote from the testimony of Osment: "Anyhow, she and I went up the river bank, and I took her to the car. I got a chance to change the casing, and she started to help me, and she stooped down . . . When she stooped down I hit her with the hammer . . . on the head . . · I do not know how many times I hit her . . . It was between five and ten minutes. I guess, after I landed on the bank, until I did that." This witness further says that just before he hit her he heard a noise in a little thicket right close by, which he thought was made by appellant, and that he was afraid of appellant, and assaulted the deceased and killed her as aforesaid. Where, in fact, was appellant at that time? When Osment and deceased were landed from the skiff a few minutes before the killing, Osment says appellant left to go to the launch.

The child who was in the skiff with appellant, testified as follows on this point: "Blackie (appellant) and I went to pump out the launch . . . We had gotten about as far up the river as from here to that brick building out there—as far as from here to the back of the house . . . Blackie got out . . . He says 'I will walk around the bend. I don't want to pass old man Green's camp.'" The child further states that he told her he would cut across the bend and meet her when she got around there, and that she paddled the boat on up the river around the bend, and that he did meet her; that it was a nearer way across the bend than the one she had to go with the boat; that at the point where he got out of the boat she could not see her mother and Osment up on the bank.

It was a very singular circumstance indeed that appellant should have landed Osment and deceased from the skiff, and that they went up on the bank to the automobile, where Osment killed deceased in a few minutes; and that as soon as appellant got out of sight,

and at a distance estimated by the child as far as the back of the house, that he should have landed from the boat and had the eleven year old girl child to paddle the boat against the current and around the bend, while he went across the nearer way. What was the noise that was heard by Osment in the nearby thicket, which he says he thought was appellant? The record is silent as to appellant's movements from the moment he landed from the boat until he had met the child after she had paddled around the bend; but we note that it is in testimony that when appellant first met Osment that evening, after the killing, without any conversation or explanation, he remarked to Osment: "You did what I told you to, didn't you?"

Again, it was a question of fact for the jury to decide, whether or not at the time Osment did the killing, appellant was doing his part, in furtherance of a common design to murder. Osment says. "The reason why the child did not go with us was, Blackie told her not to go. He would not let her go, so she would not be in the way, and that was why he was keeping her from there, so she would not see me kill her mother."

In another place, this witness says: "Blackie said he would take Violet up to the launch, so we would not have to kill her, and she would not know anything about it. He said that he was going to do that, and he did do that; I suppose he did, he left to go to the launch." '

There is no doubt in our minds on the proposition that one who purposely removes a possible or probable witness for the purpose of preventing the witnessing by such person of the proposed crime and who is keeping such person away, is within the definition of a principal, as contained in Article 78 of our Penal Code, which is as follows:

"All persons who shall engage in procuring aid, arms or means of any kind to assist in the commission of an offense, while others are executing the unlawful act, and all persons who endeavor at the time of the commission of the offense, to secure the safety or concealment of the offenders, are principals, and may be convicted and punished as such."

Was the child a probable witness, and was she removed and kept away by appellant? These were questions of fact for the jury. If the actions of appellant evidenced to any extent or degree, however slight, his participation in the matter of concealment, or procuring the safety of himself and Osment, or of Osment, at the time the deceased was killed, this would be a matter for the jury to decide, under proper instructions on principals.

. It is not necessary, under our authorities, to corroborate an accomplice's entire narrative, nor all of his testimony.—Holmes v. State, 70 Texas Crim. Rep., 423, 157 S. W. Rep., 493; Payne v. State, 40 Tex. Crim. Rep., 290; Darlington v. State, 40 Tex. Crim. Rep., 333.

There is another theory upon which might be predicated appellant's conviction as a principal offender. The record shows that the objective of appellant and Osment was to get the money and the property of the deceased. They could have had no other reason or ground for causing the death of the helpless woman, except that same was apparently a necessary step in procuring her money. Osment details the plan as outlined to him by appellant, who, as stated, was going under the name of T. E. Lewis, and claiming to be the son of deceased. Said accomplice says that after deceased was killed, appellant was going to marry a girl whose name was Mary, and after obtaining the money in the bank, all future checks and receipts necessary to continue to get the income of deceased, would be signed by said girl as "Mary Lewis," and the matter could continue indefinitely. After the death of deceased, appellant, in pursuance of this plan, as disclosed by the evidence of other parties, forged checks and got money belonging to deceased out of the bank, and made many false statements as to her whereabouts, the first one being made the afternoon she was killed and shortly after it occurred. He also appropriated her property, beginning that very afternoon. These facts clearly show a conspiracy between Osment and appellant, and for so long as same continued; and, until its consummation, the acts of each in furtherance of the common design, were the acts of all, and each would be a principal in any crime committed in the execution of such design. We think the trial court did not err in submitting the law of principals to the jury. There was no exception to the manner of such submission.

Appellant's remaining bill of exceptions is to the testimony of the witnesses who found what purported to be the remains of deceased. It appears from the record that, after his conviction, Osment carried the officers to the spot where he said he had placed the body of deceased. It was under water at the time they went there, but the officers waded in the water and found the entire skeleton, clothes, hair, etc., of a woman. Witnesses upon the stand identified the clothing by color and description as that which, in their judgment, was worn by deceased at the time of her death. The bill of exceptions is multifarious, containing a continuous narration of the exceptions taken to the testimony of five different witnesses, and we might content ourselves with declining to consider it for that reason, but the severity of the penalty has led us to give the matters complained of our attention. We do not think the court erred in permitting the clothing found near the spot where the body was said to be hidden, to be exhibited before the jury. The identification of the deceased was a serious contention and it was proper to permit the witnesses to examine the clothing and testify that in their opinion the same were the clothes worn by deceased. This exhibition of the clothing to the witnesses placed it before the jury as effectually as did its actual tender as evidence by the State. Nor do we think there was any error in refusing to strike out the evidence

of witnesses who found the bones, hair, etc., because of the fact that they were unable to state postively that same were those of deceased; nor do we believe any error was committed by the exhibition before the jury of a hammer and hatchet found in the car of deceased after her death. It was alleged in the indictment that the grand jury did not know the means by which she was killed, and it was not error to permit the foreman of the grand jury to testify about the efforts made by the grand jury to ascertain such means and their inability to do so.

We have given to this case our careful attention and scrutiny. The enormity of the crime, and the fact that the gravest penalty known to our law was inflicted, has led us to thoroughly sift each fact and circumstance. We are unable to find any reversible error in the record, and the judgment of the trial court is affirmed.

*Affirmed.*

## ON REHEARING.

### February 4, 1920.

LATTIMORE, JUDGE.—Appellant's able motion for rehearing urges a number of interesting questions, first among them being the insistence that the charge of the trial court on principals was erroneous, and that we should have so held.

Our Procedure in this State requires, under certain statutory directions, that the charge of the court be excepted to in due time, so that the supposed errors which are pointed out may be corrected, and the cost and delays of appeals be lessened; failure to so except is held to cure all errors in the charge not fundamental. Examining the charge in the instant case and the exceptions reserved thereto, we find that two exceptions were levelled at that portion of the charge now urged as erroneous. Said exceptions are as follows:

1.

"The court erred in his charge on the law of principals under the facts in this case wherein it is stated in said charge that defendant was a principal whether bodily present on the ground when the offense was actually committed or not.

2.

"Because the court erred in submitting the case to the jury on the charge as written, because there is no evidence justifying the court in submitting the case to the jury on the theory that the defendant was the principal in the commission of the offense."

That part of the court's charge at which said exceptions were directed, is as follows:

"All persons are principals who are guilty of acting together in the commission of an offense. When an offense has been actually committed by one or more persons, the true criterion for determining who are principals, is, Did the parties act together in the commission of the offense; was the act done in pursuance of a common intent and in pursuance of a previously formed design in which the minds of all united and concurred? If so, then the law is that all are alike guilty, providing the offense was actually committed during the existence and in the execution of the common design and intent of all, whether in point of fact all were actually, bodily present on the ground when the offense was actually committed or not."

In order to fully understand the rulings of this Court, and its application of the rule mentioned, to said exceptions, and to further ascertain if the charge given was correct, we quote from that portion of the charge, wherein the law was applied to the facts of the case:

"Now, if you believe from the evidence, beyond a reasonable doubt, that the defendant, T. E. Middleton, alias T. E. Lewis, Blackie Lewis, acting with Robert Osment, in the County of Liberty and State of Texas, on or about the time alleged in the indictment, with a deadly weapon or instrument reasonably calculated and likely to produce death by the mode and manner of its use, and not in defense of himself against an unlawful attack, real or apparent, reasonably producing a rational fear or expectation of death or serious bodily injury, and not under circumstances which would reduce the offense to the grade of manslaughter, with intent to kill, did unlawfully and with malice aforethought by some means unknown to the Grand Jury and thereby did kill said Mrs. Mary Lewis as charged in the indictment, you will find him guilty of murder, as charged, and assess his punishment at death or by confinement in the penitentiary for life, or for any term of years not less than five."

The first of said exceptions is based on the proposition that under the facts it was error to tell the jury that defendant could be found guilty and punished whether bodily present or not; and the second sets forth that there was no evidence supporting the theory that appellant was a principal at all in the case. Neither of these two exceptions is to the form of the court's charge on principals, and substantially both insist that no charge on that theory should be given under the facts. No special charge was asked. The trial court was correctly of opinion that there were facts in evidence calling for a charge on principals; and, inasmuch as one may be a principal under the law when not bodily present, as fully as when present, and the theory of absent principals was supported by evidence, it was the duty of the trial court to submit that theory also. It follows, in our opinion, that neither of said exceptions was well taken, but it is so earnestly insisted by counsel for appellant that the charge defining principals was erroneous, and that this Court has often so held, we have given our careful attention to the charge mentioned, to see if the same be error, and

in any wise effective in having visited upon appellant the severe penalty inflicted.

We have found among the decisions of this Court an apparent conflict with regard to said charge. Beginning with the Welsh case, 3 Texas Crim. App., 413, there is an unbroken line of decisions upholding this form of charge. See Scales v. State, 7 Texas Crim. App., 361, opinion of unanimous court, by Judge Clark; Cook v. State, 14 Texas Crim. App., 96; Bean v. State, 17 Texas Crim. App., 60; unanimous opinions by Judge White and Wilson, respectively. These cases are approved by citations continuously, and have never been overruled, as far as we are aware. However, in the Yates case, 42 S. W. Rep., 296, the form of charge given by the trial court in the instant case, was held erroneous, but without discussion or reasoning, the court merely stating that such holding was on authority of the Dawson case, 41 S. W. Rep., 599. The Dawson case is not authority for such holding. Its facts showed a conviction, as a principal, of one whose entire connection with the alleged offense was unquestionably ended before the offense was committed, and who could only have been held as an accomplice. It does not appear in the opinion in the Dawson case what character of charge on principals was given by the court, but this Court, speaking through Judge Henderson, simply held that the facts failing to show appellant guilty under any phase of the law of principals, the trial court should only have submitted the count in the indictment, charging the accused as an accomplice.

A charge somewhat similar to the one under discussion, was held bad in the Wright case, 48 S. W. Rep., 191, upon the cited authority of the Yates and Dawson cases, *supra;* but this Court affirmed the Wright case because it appeared from the facts therein that the appellant was a principal under the law, and we hold the charge to be harmless error.

In Joy's case, 51 S. W. Rep., 933, this court, again speaking through the same learned judge who rendered the Yates and Dawson opinions, condemned the charge under review, without discussion or analysis thereof, but solely on the authority of the Dawson, Yates, and Wright cases, *supra.* The Criner case, 53 S. W. Rep., 873, contains a charge somewhat similar to the one under review, but which is manifestly erroneous, and in disposing of the case by reversal, this court says that said charge has been held erroneous, and cites the above cases.

In Steed v. State, 67 S. W. Rep., 328, said charge is held bad, merely citing the authorities we have discussed, and holding in effect that one cannot be a principal unless he is bodily present when the offense is committed. There was no discussion, in the opinion, of the authorities cited.

In McAllister v. State, 76 S. W. Rep., 760, the case is reversed for other errors, but this court condemns without analysis a charge

similar to the one under discussion, merely citing the Criner case, *supra*.

In McDonald v. State, 79 S. W. Rep., 542, the charge under discussion was condemned, citing as authorities the opinions we have above mentioned, without analysis of any of them. This opinion is by the same learned judge who handed down that in the Steed case, *supra*, and holds that to be a principal one must be actually and bodily present when the offense was committed.

In the Barnett case, 80 S. W. Rep., 1013, the same eminent jurist held this charge erroneous, citing the above cases. The facts as stated showed appellant in that case to be guilty only as an accomplice.

The Armstead case, 87 S. W. Rep., 824, holds the above charge erroneous in a case of circumstantial evidence, in which the evidence tending to connect the accused with the commission of the offense was his possession of recently stolen property. Said case holds, however, that the form of charge given in the instant case would not be reversible error if the proof showed the accused to be a principal under some phase of the law of that issue.

Holmes v. State, 91 S. W. Rep., 588, condemns the charge under discussion without analysis or reasoning, merely referring to some of the cases above mentioned. The charge is held bad because it permits the jury to convict as a principal one who was not present at the commission of the offense, and the opinion states that the facts only showed him guilty as an accomplice. This opinion was also rendered by the same learned judge who spoke for the court in the Steed and McDonald cases, *supra*.

In Fruger v. State, 99 S. W. Rep., 1014, said charge is condemned without discussion, citing the above authorities; and the case is reversed for this and other reasons. No statement of facts appears.

In the O'Quinn case, 55 Texas Crim. Rep., 18, 115 S. W. Rep., 39, a case is discussed in which substantially a similar charge was given to the one under discussion, and said charge is condemned, citing the above authorities without analysis of any of them.

In the Davis case, 55 Texas Crim. Rep., 495, 117 S. W., 159, a case is presented in which the issues making the accused a principal under any phase of the law, were sharply contested and the facts showing the guilty connection of the accused, were occurrences which took place after the commission of the alleged offense. The charge under disussion was condemned, citing some of the above authorities, and without analysis of any of them.

In Clark v. State, 60 Texas Crim. Rep., 173, 131 S. W. Rep., 556, this charge is condemned, but the court held that if the parties were engaged in a common purpose, one doing one part, and the other doing another part, when the offense was committed, they would be principals, and the error of such charge would not be reversible.

In La Fell v. State, 69 Texas Crim. Rep., 307, 153 S. W. Rep., 884, this charge is condemned on the authority of the cases above

discussed, it being held that said charge was erroneous, especially where the defense was alibi and the case one of circumstantial evidence, and the inculpatory facts occurred either before or after the commission of the alleged offense.

In Silva's case, 71 Texas Crim. Rep., 213, 159 S. W. Rep., 223, this court held erroneous a charge similar to the one under discussion, citing the above authorities again, without analysis of any of them. It is stated that said charge would not be reversible error if the evidence showed without controversy appellant's presence when the offense was committed; by which we take it this court meant to say that if the evidence in a given case shows without controversy that the accused was a pincipal under any phase of the law, this charge would not be reversible error. It is also stated in the opinion that such a charge is reversible in felony cases where the defense is alibi, or the evidence is circumstantial, or only such as shows guilt as an accomplice or accessory.

Reviewing the above decisions carefully, and examining their statements of law and of fact, it is apparent that the Yates case is the original and foundation opinion, upon which is piled up a gradually lengthening line of authorities holding the charge in the instant case erroneous. Not one of the cases cited discusses or analyzes in the opinion, the said authorities. The Yates case is based entirely upon the Dawson case, and it is perfectly apparent from a reading of the Dawson opinion that it is not authority for the holding in the Yates case, and that the superstructure of precedent piled upon precedent must fall with the authority cited as the basis and reason for such holding, unless by some sound reason the charge be now found to be erroneous.

We have much respect for the ancient and honored doctrine of *stare decisis,* but as between a line of decisions of this court which we believe announces the law correctly, and another line of decisions which appear to us to arrive at incorrect conclusions, and to be based upon erroneous citations, we believe our duty is plain to announce the error when our attention is called to the same, and to affirm our views of what the law really is. We think the charge in this case correctly states the definition of principals. Article 74 of our Penal Code says that all persons who are guilty of acting together in the commission of an offense, are principal offenders. Following this comprehensive general statement of the underlying principle, which is *acting together in the commission of the offense,* come Aticles 76 to 78, each pointing out specific ways in which the parties may be said to act together. The six specific definitions in these articles, hold that in the following cases the parties are principals:

(1) When A actually commits the offense, but B is present, knowing the unlawful intent, and aids by acts or encourages by words.

(2) When A actually commits the offense, but B keeps watch, so as to prevent the interruption of A.

(3) When A is actually executing the unlawful act, and B engages in procuring aid, arms, or means of any kind, to assist while A executes said unlawful act.

(4) When A actually commits the offense, but B, at the time of such commission, is endeavoring to secure the safety or concealment of A, or of A and B.

(5) When A employs an innocent agent, or by indirect means causes the injury, or brings about the commission of the offense.

(6) When A advises or agrees to the commission of the offense, and is present when the same is committed, whether he aid or not.

Of these six statutory ways in which parties may act together and be principal offenders, it will be seen that two only require the presence of the co-principal with the one actually doing the criminal act, while four make him a principal though physically absent from the scene of the crime; but no confusion will arise if we keep clearly before us the underlying principle that in every case, no matter what phase of the law is involved, the evidence must show, and the charge of the trial court submit, that *at the time of the commission of the offense, the parties must be acting together, each doing some part in the execution of the common purpose.* As is well set forth in the Cook case, 14 Texas Crim. App., 96, just here lies the line of cleavage between accomplices and principals; that is, that unless the accused be then actually doing some thing which associates him with the execution of the unlawful act at the very time it is done, he would not be a principal. It would be immaterial which one of the six methods mentioned he pursues, but he must be doing something in some one of the ways enumerated.

Turning to the charge complained of, which we observe has been carefully analyzed by some of the brightest minds that have ever adorned this bench before the holding which we conceive to be erroneous in the Yates case, we see that said charge tells the jury that before they could convict they must believe beyond a reasonable doubt that the accused, Middleton, "acting with Robert Osment . . . in Liberty County, Texas, at the time alleged in the indictment . . . did unlawfully kill Mrs. Mary Lewis, with malice aforethought" before they could find him guilty. Further in his definition of principals, the court says that "all persons who are guilty of acting together in the commission of an offense, are principals." We note that this is exactly what is said by Article 74 of our Penal Code, in its comprehensive definition of principals.

In Cecil's case, 100 S. W. Rep., 390, this court, affirming a seventy-five years sentence for murder, in a case wherein the above was all the law on principals submitted, used this language: "We do not believe that it is essential in defining principals, to do more than was done by the court in this case."

Referring to the charge in the instant case, after the language above set forth, the court continued its definition of principals as

follows: "When an offense has been committed by one or more persons, the true criterion for determining who are principals, is, *Did the parties act together in the commission of the offense?* Was the act done in pursuance of a common intent, and in pursuance of a previously formed design, in which the minds of all united and concurred? If so, then the law is that all are alike guilty—whether all were bodily present or not when the offense was actually committed."

We affirm that it is necessarily true that in all cases of absent principals, that the thing or things done at the time by the one not present, must result from a common intent or previously formed design, else there could be no acting together; and, likewise, it follows with equal force and certainty that if parties have a common intent or previously formed design to commit an offense and *act together in the commission of the same,* they are and must be principals; and equally so, whether the particular act of the co-principal bring him under one or the other of the various methods above specified, constituting the different phases of the definition in law of principals.

So holding, we think the Yates case, and each of the other cases holding this charge incorrect, should to that extent be overruled. We are not to be understood as holding incorrect the decisions in all of said cases, because in many of them the facts justified the holding that any charge on the subject of principals was not called for by the facts. We would further conclude that those opinions holding that the giving of said charge would in no case be reversible error where the unquestioned proof showed the presence of the accused at the time of the commission of the offense, announces too restrictive a rule, and that the rule ought to have been stated as being that if the unquestioned proof showed that the accused was a principal under any phase of the statute defining principals, the charge should not be held reversible error. Mere presence of the accused does not make him a principal. Why then hold in a given case that if his presence be proven, an erroneous charge would be harmless? The rule should have been as stated above, and if the uncontradicted facts showed the appellant to be a principal in a given case, the charge should have been held harmless.

From what we have said, it follows that in our opinion, no error was committed by the trial court in giving the charge complained of. Even if we were not correct in holding the form of said charge as given to be a correct announcement of the law of principals, it would still follow that because the uncontradicted testimony showed that at the time of the commission of the offense in the instant case, the appellant was either secreted nearby, viewing the commission of the crime which he had advised, and was, therefore, present and a principal; or else, if absent, he was endeavoring to secure the safety and concealment of Osment, or Osment and himself, by purposely removing and keeping away from the scene of the crime, the daughter

86 Tex.—21.

of deceased, who, by her presence, would have witnessed or prevented the crime; and this uncontroverted testimony showing him to be a principal, the charge, in any event would be harmless error.

It is also urged that we erred in not holding that the testimony of Mr. Kerr, foreman of the grand jury, was inadmissible, in that portion of the same wherein he testied that the grand jury concluded that Mrs. Lewis had been killed. An examination of the record and bills of exceptions, shows that this witness testified at length to the efforts made by the grand jury to ascertain how the deceased was killed, and if the bill of exceptions be sufficient to call for our consideration, still, the objection was made to all of said testimony of this witness, and as said objection and exception to all of said testimony is contained in one bill of exception, the same was properly overruled. The indictment alleged that the means or instrument used in the commission of the homicide was unknown to the grand jury, and it became material in the trial of the case to show that fact, and all efforts showing the inability of the grand jury to find out how the homicide was committed, and the means or instrument used, was admissible. A general objection to the testimony of a witness, a part of which is material and competent, will not avail in this court.

Finding no error in our former opinion, the motion for rehearing is overruled.

*Overruled.*