Bill Smith, Alias C. A. Jones, v. The State.

No. 5811. Decided February 16, 1921.

### 1.—Theft of Automobile—Conspiracy—Acting Together.

Where, upon trial of theft of an automobile, the testimony plainly showed an acting together of defendant and his companions, there was no error in the admission in evidence of conversations and transactions occurring between them and the party to whom the automobile was sold. Following Middleton v. State, 86 Texas Crim. Rep., 307.

### 2.—Same—Charge of Court—Requested Charge—Original Taking.

Where, upon trial of theft of an automobile, the court in his main charge instructed the jury that in order to find the defendant guilty they must believe beyond a reasonable doubt that he took the automobile in question from the possession of the alleged owner, and there was no defensive evidence showing the connection of defendant with said automobile to have begun after the car was stolen, nor was that theory suggested by the testimony, there was no error in refusing defendant's requested charge embodying such latter theory.

### 3.—Same—Possession—Real Owner—Special Owner—Principals.

A car left temporarily in a garage while the owner is about his business in the vicinity is legally in the care, control, and management of the general owner as well as the special owner in prosecutions for theft, and a claim of ownership and possession, under our decisions, sufficiently makes out a case of taking against the defendant; there being no affirmative theory of guilty connection after the car was taken; besides, the defendant and his companion were acting as principals.

Appeal from the Criminal District Court of Dallas. Tried below before the Honorable Robt. B. Seay.

Appeal from a conviction of theft of an automobile; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Baskett & DeLee,* for appellant.—On question of possession: Cited Cases v. State, 12 Texas Crim. App., 59; Perkins v. State, 32 Texas, 109; Field v. State, 24 Texas Crim. App., 422.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—On question of conspiracy: Smith v. State, 21 Texas Crim. App., 96; Mixon v. State, 35 Texas Crim. Rep., 458.

LATTIMORE, JUDGE.—Appellant was convicted in the Criminal District Court No. 2, of Dallas County, of the offense of theft of an automobile, and his punishment fixed at two years confinement in the penitentiary.

The evidence shows substantially that Mr. J. J. Childers lost a Ford touring car in Dallas, on the night of November 15, 1919, and that on the same night said car was taken to what is known as the Jackson Street Garage, in said city, and left there, the proprietor giving to the party leaving said car, a duplicate cardboard check, on which was a number and a date. On Monday following, same being the 17th of said month, one J. M. Love met a witness named McCommas in the Oriental Hotel, in Dallas, and asked him if he wanted to buy a car, and upon receiving an affirmative answer, further stated that he knew a fellow who had a car to sell, and who would sell it right. Love then took McCommas to the Jackson Street Garage, and showed him the Childers car. In his testimony upon the trial, Mr. McCommas said: "It was a Ford touring car, model 1919. That is the car I afterwards learned belonged to Mr. Childers." Love priced the car at $450, and the parties agreeing upon that sum, Love started out to find the party it belonged to. They went to the corner of Ervay and Commerce streets, and there met appellant, who said his name was Jones—C. A. Jones. McCommas asked him if the car he had looked at belonged to him, and appellant said it did. McCommas asked him what he would take for the car, and appellant told him. McCommas then stated that he would take it, and asked appellant to make a bill of sale for the car, and in his testimony uses the following language: "He said that the car at the Jackson Street Garage which Love had shown me was his, and that he wanted $450 for it." Appellant wanted to know how he was going to be paid, and said he wanted the money—wanted his pay in cash. McCommas not having that amount of money with him, the three parties went to a bank, where a Mr. Fisher o. k'd the check of Mc-Commas. Fisher testified on the trial, and identified appellant as one of the parties who came to the bank with McCommas. All three of the parties interested then went to the office of a Mr. Crown, who fixed up a bill of sale, which appellant signed, and which was introduced in evidence, which bill of sale described a Ford touring car as the property conveyed. The parties then started to the courthouse to see about the license, but on the way, appellant said he had to go in a drugstore and call some one over the telephone, and Love and McCommas went on to the tax-collector's office without appellant. Love secured a license, and went with McCommas back to the Jackson Street Garage, but when they reached said place, the car in question was gone. Mr. Childers had discovered the whereabouts of said car in said garage a

short time before Love and McCommas returned, and had taken it away. While McCommas and Love were discussing this situation, a detective came up and arrested them both, and later released McCommas. Shortly after the detective had taken the above named parties to the city hall, appellant came to said garage, and according to the testimony, asked where the car was. The proprietor told him that Love and McCommas had been taken to the city hall, and appellant said he would go down there. He evidently did not do this, for he appears to have been arrested several days later. When Love was arrested, the bill of sale prepared by Crown, and signed by appellant in the name of Jones, was taken from him. Love also had in his possession a cardboard claim check for a Ford touring car at the Jackson Street Garage, which claim check bore the date of November 15. When he was arrested, Love attempted to throw this check away, but the officer observed him, and secured the check, which was offered in evidence. Appellant introduced no witnesses.

The trial court charged on circumstantial evidence, and at the request of appellant, instructed the jury that they could not convict unless they found from the evidence, beyond a reasonable doubt, that the automobile which appellant intended to sell McCommas, was the automobile of J. J. Childers. Appellant has several bills of exception to the admission of conversations and transactions occurring between McCommas, J. M. Love, and others, out of the presence and hearing of appellant. The testimony so plainly shows an acting together of Love and appellant, that it is useless to recount the same. The plain object of their joint effort, was not to take the automobile for use, but to convert the same into money. What was said and done by one in furthering said object, is admissible against the other, whether present or not. Middleton v. State, 86 Texas Crim. Rep., 307, 217 S. W. Rep., 1046; Branch's Ann. P. C., Secs. 693-694.

Appellant also requested a special charge, which reads as follows: "In this cause you are charged that the defendant is charged by indictment with taking a certain automobile from the possession of J. J. Childers, and is not charged with having sold or attempted to sell to L. M. McCommas an automobile.

You are therefore charged that unless you find and believe from the evidence, beyond a reasonable doubt that the defendant did take an automobile from the possession of J. J. Childers about the time named in the indictment, you will acquit the defendant.

In this connection you are charged that no connection of the defendant with said car after it was so taken, if you find he was so connected in any manner therewith, would authorize you to convict him. Before you can convict him you must find and believe from the evidence beyond a reasonable doubt that the defendant took same from the possession of J. J. Childers in the original taking."

In his main charge, the trial court instructed the jury that in order to find appellant guilty, they must believe beyond a reasonable doubt

that he took the automobile in question from the possession of Childers, the owner. There was no defensive evidence offered showing the connection of appellant with said car to have begun after the car was stolen, nor was that theory suggested by the testimony. Everything done and said both by appellant and his co-conspirator Love, if true, made appellant the owner of the car, and the person in possession thereof, and as having the right to dispose of the same. A car left temporarily in a garage while the owner is about his business in the vicinity, is legally in the care, control, and management of the general owner, as well as the special owner, for all purposes of prosecution for theft, and it is not necessary to constitute such possession that the real owner be at the garage, or in the actual management and possession of said car. If the identity of the car be admitted or proved— and we observe that this question was submitted in the special charge, for the jury to pass upon—then we have before us a case in which all the evidence points to appellant as the pretended owner, and in possession; and a claim of ownership and possession, under our decisions, sufficiently makes out a case of taking against appellant. There being no affirmative theory of guilty connection until after the car was taken, the trial court was under no obligation to submit the issue. Said charge would further be erroneous, in that it entirely ignores the question of the acting together of appellant and J. M. Love in the taking of said car. If said parties were acting together in such way as to make them principals, appellant would be guilty, even though the car was actually taken by Love. However, the main charge required the presence and connection of appellant with the taking as fully as the facts called for the submission of said issue.

We have found no reversible error in the record, and the case will be affirmed.

*Affirmed.*