**Bobby Ray JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 48151.**

Court of Criminal Appeals of Texas.

Feb. 27, 1974.

James H. Chesnutt, II, Beaumont, for appellant.

Tom Hanna, Dist. Atty., and John R. DeWitt, Asst. Dist. Atty., Beaumont, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of robbery by assault. Punishment was assessed by the court at eight years.

The record reflects that one Jack Wier was robbed and beaten to death on February 15, 1971. The indictment charged appellant in two separate counts for murder

and one count for the robbery of Wier. Appellant's trial began before a jury on his plea of not guilty. After considerable evidence and testimony had been presented by the State, the appellant changed his plea of not guilty to a plea of nolo contendere to the robbery count before the court. The State then elected to drop the two murder counts. The trial judge, after properly admonishing appellant, accepted his plea.

Appellant contends the evidence is insufficient to support his conviction as an accomplice by robbery by assault.

The record reflects that Wier was killed during the robbery by a blow to the head, apparently inflicted by an automobile starter. Appellant's written statement, admitted into evidence, stated that he went with Eldridge Joubert to a graveyard about a block from Jack Wier's Auto Parts, where Joubert told him he needed $15.00 to pay his probation fee. After appellant loaned Joubert his pocket knife and shirt, Joubert said that he was going back to "Jack's" but he didn't say what he was going to do. He then left the graveyard and later came back with a large bag in his hand. Joubert pulled out a wallet from his front pocket, took out two ten's and three one's, threw the wallet away and gave appellant $2.00, a pistol, and his shirt back.

Officer W. C. Tatum, a detective for the Beaumont Police Department, testified that on February 15, 1971, he began his investigation into the death of Jack Wier. He went to Jack's Auto Parts located on Pine Street in Beaumont, where he took a series of photographs. He found two pair of glasses, a small chain, a "U" bolt, some cigars, a pocket protector, and three buttons, two red and one white, at the scene. He had cut one of the red buttons off the deceased's shirt and had also cut a piece of cloth from the back of deceased's shirt.

W. P. Hayes, an investigator with the District Attorney's office, testified that he first came into contact with appellant at about 5:00 on the afternoon of February 17, 1971. At approximately 1:00 P.M. on that day, Joubert was brought into his office and told him that the instrument used to kill the deceased was in a cemetery across the street from Jack Wier's Auto Parts. When Joubert was taken to the cemetery, he told them that he had met appellant earlier on the day of the murder and appellant had gone with him to the cemetery and sat there while he made two or three trips back and forth to Wier's place "without any idea in mind" of robbing Wier. During one of his trips, he and appellant changed shirts and he borrowed appellant's knife. After the killing he went back to the cemetery where appellant was waiting and gave appellant the pistol, at which time they changed shirts again and left the cemetery. He also told Hayes the gun was in appellant's possession. Hayes went on to testify that after they left the cemetery they went to a church where Joubert said appellant might be playing basketball; there they found and arrested appellant. They then went to appellant's house, where Joubert pointed out some clothing and a pocket knife.

Officer Eddie Cole, a detective for the Beaumont Police Department, testified that he obtained a warrant for Joubert's arrest and that he also arrested appellant without a warrant on the same date at a place where he was playing basketball. At the time he arrested appellant he told him he was under arrest for the murder of Jack Wier and, after appellant was given the "Miranda" warning, he told him that they wanted to go over and pick up the gun. Appellant at first denied knowing anything about it, but after another party in the car (apparently Joubert) told appellant that "he had told them everything" they went to appellant's house and got the gun. They then went to Joubert's house where they picked up a shirt and pocket knife. Cole also testified that he knew at the time in question appellant was 17 years old.

Appellant, testifying in his own behalf, out of the presence of the jury, stated that he was arrested on February 18, 1971, by Detective Cole. After he was arrested, he

was put in Detective Cole's car and Joubert was in the car at the time. Cole asked him about a gun, to which he replied that he did have a gun which Joubert had given him. They then proceeded to his house and retrieved the gun in question, and then went to Joubert's house. After leaving Joubert's house, they went to the District Attorney's office, where he made the written statement in question. Appellant also testified that at the time he made the statement he did not know he was being charged with the murder of Jack Wier and after he gave them the pistol, he thought he would be able to leave. At the time he was arrested he didn't know why the police officers wanted to see him, and Joubert had said nothing to him when he got into the car, except that he had told the officers that he had given him the gun. He then told Cole "Yes, I have the gun." After they had gone to his house and gotten the gun, they said they now wanted him to "clear up how I got the pistol." After appellant had signed the statement, he was taken back to his house, whereupon he gave the police the shirt that he had given Joubert the day Wier was killed.

Appellant introduced a letter into evidence, dated March 8, 1971, from Dr. C. L. Adkins that was addressed to Pat Hayes of the District Attorney's office. The State stipulated that if Dr. Adkins were there he would testify to what was contained in the letter. The letter in question stated that Dr. Adkins had talked to Joubert and appellant. Both appellant and Joubert told him that appellant "really had nothing to do with the robbery and murder" and appellant stated to him that he didn't even know the murder had been committed until the police picked him up. He stated that appellant had an I. Q. of 81.

After Pat Hayes had again testified to substantially the same facts as he had previously testified to and the court had recessed overnight, the appellant entered a plea of nolo contendere. The State then moved to strike the first two counts of the indictment and proceed on the third count,

robbery by assault. Appellant's counsel thereupon stated that they had "no objection to the evidence already elicited before the court and will stipulate to that fact." Both appellant and his counsel then signed a stipulation of testimony agreement and a waiver of trial by jury. The court then properly admonished appellant as required by Article 26.13, Vernon's Ann.C.C.P. and accepted his plea.

The prosecutor then introduced the investigation reports of the officers and patrolmen who participated in the investigation of the case. The contents of these reports, which were admitted without objection, contained substantially the same facts as had already been testified to. Also introduced was appellant's written statement, the shirt recovered from his house that he had lent Joubert, appellant's pocket knife, the pistol recovered from appellant's house, and the automobile starter and paper bag discovered in the cemetery where Joubert had pointed it out. Next, the State tendered into evidence a report made by Fred R. Rymer of the Texas Department of Public Safety concerning the three buttons found at the scene of the murder. The prosecutor stated to the court that the report indicated that the white button found at the scene "could have come from" appellant's shirt that he had lent to Joubert. These reports were admitted without objection. The reports stated that no blood was found on the pocket knife. The court thereupon found appellant guilty on his plea of nolo contendere.

Appellant then took the stand and testified that he had never been convicted of a felony. He was not cross-examined in any manner. Mr. Hanna, the prosecutor, in response to a question from the court as to what recommendation of punishment he had to offer, stated:

" . . . I think, because of his participation before the actual commission of the offense, which, as the Court knows, can be termed as 'Accomplice',

under the Texas law. I think that there is sufficient evidence to indicate that the man had knowledge of what was to take place in that he participated by the loan of his shirt and the loan of his knife, and after it was over he participated in the fruits of this robbery by accepting part of what had come out of there, namely the pistol. . . . ."

As stated earlier, appellant contends that the evidence is insufficient to support his conviction as an accomplice to the crime of robbery by assault. The State in its brief argues that appellant was indicted and convicted as a principal offender with Joubert in the robbery of Wier and not as an accomplice.

■ The State elected to proceed on the robbery by assault count alleged in the indictment. This count alleged that appellant "on or about the 15th day of February, 1971, in said County and State, did in and upon James Coleman Wier make an assault, and . . . against the will of the said James Coleman Wier, take from the person and possessions of the said James Coleman Wier, current money of the United States of America, . . ." We interpret this count as charging appellant with the crime of being a principal to the offense of robbery by assault.

Articles 65–69, Vernon's Ann.P.C., state the law of principals. Under these Articles there are six different fact situations in which one may be guilty as a principal to a felony offense. As explained in Robinson v. State, 493 S.W.2d 780 (Tex.Cr. App.), quoting from Middleton v. State, 88 Tex.Cr.R. 307, 217 S.W. 1046, they are:

"(1) When A. actually commits the offense, but B. is present, knowing the unlawful intent, and aids by acts or encourages by words.

"(2) When A. actually commits the offense, but B. keeps watch, so as to prevent the interruption of A.

"(3) When A. is actually executing the unlawful act, and B. engages in procuring aid, arms, or means of any kind to assist while A. executes said unlawful act.

"(4) When A. actually commits the offense but B., at the time of such commission, is endeavoring to secure the safety or concealment of A., or of A. and B.

"(5) When A. employs an innocent agent, or by indirect means causes the injury, or brings about the commission of the offense.

"(6) When A. advises or agrees to the commission of the offense, and is present when the same is committed, whether he aid or not."

Of the above six different fact situations, only two (Nos. 1 and 6) require the presence of the co-principal with the one actually committing the criminal act. The remaining four make him a principal though physically absent from the scene of the crime.

■ Viewing the evidence in the light most favorable to the State, we find that the evidence at most shows, if it does, that appellant was an accomplice to the offense in question. Appellant pled to an indictment charging him as being a principal and he was convicted as such.

The record does not show that appellant was present at the scene of the offense, as the State urges. Further, it does not show that appellant agreed with Joubert to the commission of the offense or aided Joubert by acts or words in the commission of the offense.

■ As for the other four fact situations wherein one may be a principal although not present at the scene of an offense, none of their elements are satisfied. This being so, appellant's conviction may not stand. It has been uniformly held throughout the history of this Court that an accused cannot be convicted under an indictment charging him as a principal where the proof shows only that his guilty

connection with the offense was that of an accomplice or an accessory. See Weaver v. State, 112 Tex.Cr.R. 546, 17 S.W.2d 1066 (1929); Bean v. State, 17 Tex.App. Cr.R. 60 (1884).

■ Therefore, in light of the requirement regarding trial before the Court of Article 1.15, supra, that "in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same", we find the evidence insufficient to support *all* the elements of the offenses charged. See and compare Hammond v. State, 470 S.W.2d 683 (Tex.Cr.App.1971); Edwards v. State, 463 S.W.2d 733 (Tex.Cr.App.1971); Burks v. State, 145 Tex.Cr.R. 15, 165 S.W.2d 460 (1942) with Hoskins v. State, 425 S.W.2d 825 (Tex.Cr.App.1968) wherein this Court stated that the State has the burden of introducing evidence sufficient to support the guilt of the defendant without the requirement that such evidence be perpetuated.

The judgment is reversed and the cause remanded.