# JUNE 21, 1933

BONNIE CASS V. THE STATE.

No. 14624. Delivered March 22, 1933.
Rehearing Denied June 21, 1933.
Reported in 61 S. W. (2d) 500.

MORROW, Presiding Judge, dissents.

The opinion states the case.

*W. E. Martin* and *Kirby, King & Overshiner*, all of Abilene, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for burglary of a box car; punishment, two years in the penitentiary.

The facts support the conclusion of guilt, and we find but one question raised calling for discussion, which may be stated thus:  C is on trial for burglary of a box car; after his arrest officers go to the house occupied by C and his wife; she gives her consent without any sort of coercion to search the premises. In the yard behind a barrel is found part of the property taken from said box car.  The question raised is:  Is testimony of such finding admissible over the objection that the wife cannot waive the husband's constitutional rights against unreasonable search and seizure?

The Fourth Amendment to our Federal Constitution and section 9 of article 1, of our State Constitution, use substantially the same language in saying that the people shall be secure against unreasonable searches and seizures in houses, persons, papers, and possessions.  It would seem fundamentally sound to say that unless a search, etc., be unreasonable, as that term is defined and understood, same will not violate the constitutional mandate, and since the admissibility of testimony of what is found by such search, etc., is made to depend solely on whether the search was reasonable or not, the decision of such question by any court upon any other reason than that the search is reasonable or not, must be unsound.  With profound respect the writer is of opinion that when we try to solve the question here raised upon any such ground as that one person has or has not the right to waive another's constitutional rights, we are entirely away from the issue, and get into trouble at once.

When two or more persons mutually associate themselves in the possession, management, and control of houses, lands, etc., all entitled, and each in the absence of the other, it seems idle to say that the one in possession may exercise every func-

tion incident to the business of the group, which would include ingress and egress of all sorts of persons, but that if an officer be permitted to enter and search for stolen property, his entrance and search by full and free consent of the present member of the group, this would be unreasonable, if and when he found stolen property therein which had been stolen by some other of the partners, but which would not be unreasonable if the property found be stolen by the one who had given permission for such search. Such attempted distinctions are without foundation, and seem to get away from and ignore the purpose of the framers of our Constitutions which, as said in Agnello v. United States, 290 Fed., 671, was plainly to protect the people from the unreasonable searches and seizures practiced in England under general warrants, and in the colonies under writs of assistance. To hold otherwise would be dangerously near to saying that the absent partner or partners had some vested or constitutional rights in stolen property, entrance to search for which they alone had the right to waive, or else had some right of objection to search when the common houses or lands of the group sheltered or secreted such stolen property which was in some manner excepted from the ordinary and general right of control of the common owner present and in possession.

We are compelled to believe that this strained construction of our Constitution, when invoked in case property be found claimed to have been stolen by some one or more of the absent partners, is beyond the comprehension of the Constitution when fairly construed, and is fundamentally unsound.

In Texas it is statutory that during coverture the separate property of each spouse is under his or her separate care, control and management, and this, whether it be homestead or other property. Also by statute the community property is equally owned and jointly controlled by both husband and wife, save that in article 4619, Revised Civil Statutes, 1925, it is stated that said property may not be disposed of except by the husband. Nowhere in our statute is the husband given any more right or control over the home or homestead than the wife. He has no more power or dominion to say who may or may not enter the house than she has. In fact and in reason she usually occupies and possesses the house occupied as a home every hour of the day, while the man chiefly uses it as a place to eat and sleep. Ordinarily she has as much intelligence as he, is as interested in and amenable to the laws as he; she is no longer a slave or a chattel, but her husband's equal and often his superior, and we confess our inability to

differentiate as between her right and that of her husband to give legal authority to any person, be he officer or otherwise, to enter and search. If these observations be true, either husband or wife in possession, in the absence of the other, can legally give permission to enter and search the home for stolen property or other proper purpose.

We are not without precedents for this conclusion in the decisions of our own court. In Bannister v. State, 112 Texas Crim. Rep., 158, the wife was charged with possession of intoxicating liquor for purpose of sale, and it appeared from testimony that consent to enter and search the house was given by the husband out of the presence of the wife. Upholding this and affirming the judgment of guilt against the wife, we said: "If appellant was equally in control and management of the premises with her husband, his consent would suffice to make legal a search had thereunder." In Alejandro v. State, 31 S. W. (2d) 456, opinion by Hawkins, J., the state's testimony showed that upon permission from the wife in the absence of her husband, the accused in the case, officers searched the house and found a quantity of intoxicating liquor. When the officer was asked to testify to what he found, objection was made on the ground that the wife had no right to give permission to enter. This court said: "We fail to discern merit in the objection," citing Pruitt v. State, 109 Texas Crim. Rep., 71, in which latter case we upheld the validity of a search upon consent of the wife in the husband's absence, he being on trial. In Traylor v. State, 111 Texas Crim. Rep., 58, we upheld the admissibility of testimony of what was found upon entry into the house of the accused in his absence, such entry being upon the consent of the wife. In Custer v. State, 117 Texas Crim. Rep., 164, it was shown that the officers were in appellant's house upon consent of his brother, when they discovered things testified to upon appellant's trial. We held the testimony admissible, and said this was no invasion of appellant's house in violation of the mandates of either Constitution. We also said: "The officers were in no sense trespassers; they were in the house by permission of appellant's brother." See Epple v. State, 112 Texas Crim. Rep., 612. In Pond v. State, 119 Texas Crim. Rep., 306, we affirmed a case in which a woman was convicted for possessing intoxicating liquor for the purpose of sale, in a house occupied by herself and a man who she claimed was her common-law husband, he being present when the officers made their search, it being claimed that the search warrant had by the officers should have directed a

search of premises in the husband's control, and that same was bad for that it laid control in her.

We see no reason for concluding that if the husband's permission to enter and search would authorize and render legal, testimony which might send his wife to prison as a thief, murderer, or bootlegger, a contrary rule should be announced when the permission to enter is given by the wife, in the absence of her husband.

Appellant cites Amos v. United States, 65 L. Ed., 654, 255 U. S., 313. We have carefully examined this authority. Inasmuch as there was no contest made therein on the point here involved, the facts relative thereto were not fully developed, or else not set out in the opinion. We only know therefrom that two revenue officers went, in the absence of the accused, to his house. They told his wife they were revenue officers and had come to search the premises "for violations of the revenue law," and she opened the store, after searching which said officers went into the home of appellant and searched same. The court in stating its conclusion says that these officers came "without warrant, *demanding admission* to make search of it under government · authority," etc. Further the court said: "We need not consider whether it is possible for a wife, in the absense of her husband, thus to waive his constitutional rights, for it is perfectly clear that under the implied coercion here presented, no such waiver was intended or effected." In the conclusion that the search was unreasonable, we think the Supreme Court entirely justified. The holding thus announced plainly limits the application of this opinion as a precedent to cases whose facts,—otherwise similar,—show coercion, express or implied, on the part of the officers, and this plainly makes said opinion wholly inapplicable to a case on facts such as appear in the one before us. In fact the quoted part of said opinion manifests express refusal to hold in that case what we are asked to here hold. If the Supreme Court of the land had been willing to hold that a wife in possession of the home, in the absence of the husband, had no right to authorize a search of same by officers, no matter how full and fair had been the consent given to such search,—they could and would have so held, but they did not. Nor have they so held in any opinion known to the writer.

In Duncan v. Commonwealth, 250 S. W., 101, the Court of Appeals of Kentucky said the case was on facts similar to those in the Amos Case, supra, and that there was *implied coercion* on the part of the officers, and on authority of the

Amos Case, supra, it was held that the wife's consent did not authorize the search. With highest respect for the court rendering this opinion, we think it not warranted in saying as follows: "It is apparent from the language quoted, the court without determining whether the wife might waive the constitutional rights of her husband, was of opinion that the wife by reason of the coercive situation implied from the presence of the officers of the law was relieved from the implication there was any purpose upon her part to waive such rights, or that under such conditions there was in fact such a waiver."

We find nothing in the Amos Case suggesting that the Supreme Court intended to hold or did hold that the mere presence of officers implied coercion. The testimony of the officers in the Amos Case is not quoted in the opinion, but it is stated that they told the wife that they were revenue officers "and *had come to search the premises 'for violations of the revenue law,'*" a statement strongly supporting the implication that if the wife did not let them carry out the purpose for which they came, they would search nevertheless. There is not a suggestion in the opinion in said case that there was a request for permission to enter, but exactly the contrary, as appears from the opinion, which further states that "government officers, who came without warrant, *demanding* admission." The Kentucky court having held as appears from our quotation above, it is easy to see how the same court later following what they said in the Duncan Case, supra, could decide in Potowick v. Commonwealth, 250 S. W., 102, and Veal v. Commonwealth, 251 S. W., 648, that officers who had apparently the full and free consent of the wife to enter and search, in the absence of the husband, were guilty of making an illegal search. We note that in Veal v. Commonwealth, supra, Hart v. Commonwealth, 250 S. W., 108, is cited as supporting the conclusion, but the point was not in the Hart Case at all. Again in Gilliland v. Commonwealth, 6 S. W. (2d) 467, the same court announces a broader doctrine, viz.: that consent of the wife generally would not make legal against the husband testimony discovered by a search had in his absence, no limitation being placed upon the search when made by *officers,* in this opinion. This statement in Gilliland's Case, supra, is entirely obiter dicta, no question of the wife's consent to a search being involved in that case. We regard the actual point decided in the Gilliland Case as directly opposed in principle to the contention of appellant in the case before us.

We are referred to Blakemore on Prohibition (written by

some gentleman in Mass.), sec. 957, p. 614, where it is said: "The assent of the wife of the defendant in his absence * * * constitutes no waiver of an *unauthorized* or *invalid* search and seizure." The author cites the Amos Case, supra, O'Connor v. Potter, 276 Fed., 32, and Carignano v. State, 238 Pac., 507, as authority for his statement. Neither the Amos nor the O'Connor Cases, supra, furnish ground for so broad a statement. The Carignano Case, supra, by the Oklahoma Criminal Court of Appeals, is on facts showing a search of a store entirely open to the public and in charge of the wife in the absence of the husband, to which search the wife "made no objection," in which it was held the testimony of the result of the search inadmissible. This suggests that the textbook referred to is not supported by the authorities cited. Likewise we are referred to a statement in Cornelius on Search & Seizure (2d Ed.), p. 71, as follows: "The weight of authority is that a wife has no authority to waive the constitutional rights of the husband," supporting which text Cofer v. United States, 37 Fed. (2d) 677; Gilliland v. Commonwealth, 6 S. W. (2d) 467, and Hayes v. State, 261 Pac., 232, are cited. The Cofer Case on its facts showed that an officer read to a wife in her husband's absence a warrant which authorized a search for liquor, and thereby induced her to surrender to him a gun with which he wished to make and did make experiments affecting shells, the testimony thus obtained to be used in a case not against the woman, a principle wholly foreign to that here under discussion. As stated above, the expression in Gilliland's Case supporting the text is entirely obiter dicta and foreign to any issue in that case. The Hays Case, supra, also by the Criminal Court of Appeals of Oklahoma, showed an entrance into a store by officers in the absence of the accused, and a search on consent of the clerk in charge, the testimony of what was found being held incompetent. We are constrained to conclude the text of Mr. Cornelius as not supported by the opinions cited.

The cases cited in the Hays opinion, supra, are illustrative of the danger of attempting to approach a decision of the question of whether a search is unreasonable, from the angle of the proposition that the wife has no right to waive the *constitutional rights* of her husband, which we regard as an entirely false premise. Reasoning appears in the authorities just mentioned reaching the conclusion that the "constitutional inhibition against unreasonable searches" amounts to a personal right in an individual which no one save himself has a right to

waive, which is both inapplicable and unsound as here applied, and leads to the apparent absurdity that no house or place in which absent persons own an interest or have with others a right of control or management, can be entered and searched in such person's absence and the result of such search be used against such absentee. The very statement almost outrages justice. "A stole a diamond and hid it in his bed. Three other men occupied the same room with A. Officers had the free and full consent of one or all the other three to search said room. They found the diamond. A's objection to this testimony should be sustained, not because the search was unreasonable, but because his right to object to the search was personal, and he had not in person waived such right."

Attention is further called to the case of Commonwealth v. Tucker, 189 Mass., 457, 7 L. R. A. (N. S.) 1056, 76 N. E., 127, a murder case wherein it is shown that officers went to the residence of the accused. His mother, with knowledge that they were officers and that they desired to search the house, invited them to enter and search, insisting that she knew her son was innocent. Matters were found upon search which had evidential value. Objection was made on the trial to their admission in evidence. The court said: "The officers did not act under the warrant, but under invitation of the mother * * * the evidence thereby obtained was nevertheless admissible." Also in Smith v. McDuffie, 72 Ore., 276, 142 Pac., 558, it appears that a search without a valid warrant was made of the premises of the plaintiff in his absence, his wife having invited the officers to search, when informed of the purpose of their visit. The court held that in the absence of plaintiff his wife was authorized to permit the search. In Grim v. Robinson, 31 Neb., 540, 48 N. W., 388, it appeared that plaintiff in error had good reason to believe that a minor child, a member of the household of defendant in error, had taken articles of property and had them in possession. So believing he went to defendant's house, and was allowed by the wife of the latter to look over the premises for the property, some of which he found. Held, "The wife had * * * authority to grant the permission in the absence of her husband. It was not only her privilege, but her moral duty to do so."

There are some other cases in other states which have been examined and hold to the contrary, but it is believed the writers in those cases have misapprehended the precedents cited or the principles involved.

Men can have no vested or sacred right to possess things

whose very possession is a violation of law; nor can they keep their crimes covered by invoking the rule against unreasonable search therefor, unless reason, not fictitious pretense,—but real reason exist and appear why such search be wrong and should not have been made. Mr. Webster defines "unreasonable" as "not reasonable; irrational; immoderate; exorbitant." "Reasonable," he says, is "thinking, speaking or acting according to the dictates of reason; not immoderate or excessive." He gives as synonyms "rational; just; honest; equitable; fair; suitable; moderate; tolerable."

We cannot bring ourselves to understand how, from any viewpoint, if there be two partners, each equally entitled to the care, management, and control of joint property, it can be argued that one or either can have other or different rights in the matter of allowing entry and search, from the rights of the other partner,—and especially when the only difference between the two is that one is a male and the other a female. Nor can we see reason for quibble about this when the object of the search is not some private writing or personal effect of the absent partner,—usable in the settlement of some court proceeding,—but is only for those things constituting or pertinent to a public wrong, i. e., a violation of law.

In closing we call attention to what is said in Ruling Case Law, vol. 24, p. 723, as follows: "However, one who consents to have his property searched by an officer without a warrant has no right of action as for an illegal search. And this consent need not be obtained from the owner of the property, as it is sufficient if it comes from a member of his family or his duly authorized agent or servant in possession of the property at the time. Thus the consent of the owner's wife to search the property of her husband waives any claim that he might have against an officer making the search without a warrant, or any informalities in the complaint, writ or appointment of the supposed officer. If officers armed with a search warrant, on presenting it at the home of one accused of crime, are invited by his mother to enter and search the premises, so that they do not act under the warrant, evidence obtained during the search is not illegally obtained although the act may have been a trespass as against him. Likewise, searching the office of an accused person with the consent and aid of his servant and agent, who was in possession, in order to obtain evidence against the accused, is not in violation of the constitutional provision against unreasonable searches; and the taking away

of an article found there, with the consent of the agent, is not a seizure."

We cannot agree with appellant's contention herein. We believe the wife's consent freely and fully given, without misrepresentation or compulsion on the part of the officers, took out of the search any element of unreasonableness, and that the testimony of the finding of the stolen property in the back yard was admissible against the appellant.

The judgment will be affirmed.

*Affirmed.*

MORROW, Presiding Judge (dissenting).—A synopsis of the state's testimony is as follows: R. L. Gomillion, a special agent for the Texas & Pacific Railroad Company, while in the yards of the company at Abilene late at night, observed that the seal of a certain box car had been broken, and saw some merchandise between the rails of the track near the car. The merchandise consisted of two cases of coffee, a carton of chewing gum, and a wooden box containing an electric fan. A freight train going east was preparing to pull out at the time, and the car mentioned was in the train. After making the discovery, Gomillion observed the appellant about 100 feet away. The two approached each other. The officer had a flashlight and the appellant had a cotton-picking sack. At the command of the officer, the appellant picked up the merchandise and placed it in the officer's automobile. The appellant was arrested by the officer and placed in jail. No warrant for the arrest was possessed by the officer. Some time after the appellant's arrest, and while he was in jail, it was ascertained that instead of only two cartons of coffee, there were three taken from the car. Early the next morning while the appellant was in jail, the officer, in company with another, went to the home of the appellant, where they found some coffee hidden behind a barrel about thirty feet from the appellant's house. It was inside of his enclosure and near his private residence. The wife of the appellant was there and was told by the officers that they wanted to look around the place. She told them to go ahead; that there was nothing there that she knew of. The coffee was found in the back yard behind a barrel, apparently hidden from view. It was taken to the city hall. The search was made after the officers had learned that there had been taken from the car three instead of two cartons of coffee.

From the state's testimony the theory arises that the appellant, after breaking the seals and opening the car, took from it the three cartons of coffee and the other property men-

tioned; that he took one carton of coffee to his residence and hid it, and at the time of his arrest, had returned to the railroad yards with the intention of removing the remainder of the property taken from the car.

By his own testimony and by that of other witnesses, the appellant presented the defense of alibi. He also introduced testimony as to circumstances tending to show that the carton of coffee which was found in his yard may have been placed there by some other person. In the absence of the evidence obtained through the search, the facts would be insufficient to support the conviction. The circumstances detailed, including the possession of a part of the stolen property on the appellant's premises, apparently filled the measure of proof demanded by the law governing circumstantial evidence.

Bill of exception No. 1 contains the following: "Be it remembered that the proof showed from such officer, Gomillion, who was a peace officer of Texas, as well as special agent for the T. & P. Railway Company, and from Sam Beam, policeman of Abilene, that at the time they made the search of the defendant's premises the defendant was confined in the city jail of Abilene; that neither of them had the consent or permission of the defendant to search his premises; that neither of the officers making such search had a search warrant authorizing them to search the defendant's premises so searched; and that when they went to such premises to search them, they found the defendant's wife at home and told her that they wanted to look around over the place, and that the defendant's wife told them to go ahead and look around, that there was nothing there that she knew of; that the search of the said premises was made solely and only by authority given them by such consent and permission of the defendant's wife as implied from the said conversation with her relating thereto."

In a written statement made after the search of his home and while he was in jail, the following appears and reference to it is made by the judge in approving the bill: "I understand the law raided my yard this morning and found a case of coffee. The law had my permission to come in my yard and get this case of coffee."

The approved bill of exception, as well as the evidence upon the trial, precludes any reasonable contentions that at the time the officers searched the appellant's premises they had from him consent or permission to do so. In the bill of exception, it is said that *at the time of the search the appellant was in jail and neither of the officers had the consent nor permission*

*of the defendant to search his premises; that they found the
appellant's wife at home and told her they wanted to look
over the place and she told them to go ahead; that the search
was made solely upon such consent as her declaration implied.*
The bill of exception is approved with the above recitals. There
are no contradictions of the bill. The qualification simply
draws attention to the fact that after his place had been raided
and the appellant informed thereof, he said that the officers
had permission to go in the yard and get a case of coffee. The
language of the appellant's confession and the quotation in the
bill carries with it no implication other than that the appel-
lant's acquiescence, such as was given, was after the search
had been made.

Touching the implied authority of the wife to consent to
the search of the home of the husband, so as to estop him from
making effective opposition on the trial of a criminal case, to
the use against him of evidence obtained in such search, there
has been by this court no comprehensive and definite decision.

In Texas, there are some cases dealing with the subject in
hand. In Alejandro v. State, 31 S. W. (2d) 456, the testimony
of the officer that he had received permission from the wife of
the appellant to make the search was opposed upon the sole
ground that the wife, under the law, was not permitted to tes-
tify as a witness against her husband. In passing, the court
said: "We have not been favored with a brief from appellant,
and may not get his viewpoint, but we fail to discern merit in
the objection," (citing Pruitt v. State, 109 Texas Crim. Rep.,
71, 2 S. W. (2d) 856.)

Apparently the matter was disposed of entirely upon the
ground of practice, that is, namely, that proper objection to
the testimony was not put forward.

In the Pruitt Case, supra, the state relied upon the testi-
mony of an officer acquired in a search of the appellant's prem-
ises upon the permission of his wife. The point was made that
the wife was without authority and that coercion was used by
the threat to get a search warrant. The court held that there
was no such threat, and upon that point the decision rests.

In the Traylor Case, 111 Texas Crim. Rep., 58, the sheriff
entered the appellant's house to get a drink of water upon per-
mission of his wife. While there, the officer observed a pair
of shoes, which were used in evidence against the appellant.
The objection to the receipt of this evidence was overruled upon
the ground that the officer's entry into the house was for a

legitimate purpose and within the scope of the wife's authority as mistress of the house.

In the Bannister Case, 112 Texas Crim. Rep., 158, there were found in the appellant's house a number of bottles of intoxicating liquor. The husband was confined to his bed when the officers entered. The officer knocked upon the door and entered, upon the invitation of the husband, who was told by the officer that he wanted to look the place over for whisky. Bannister replied: "All right, go ahead." On the trial, the point was made that the information acquired by the search was not admissible against the wife, who was on trial. The objection was not sustained. Both husband and wife were present and apparently were co-actors in the commission of the offense. It was stated upon the authority of Pruitt v. State, 109 Texas Crim. Rep., 71, 2 S. W. (2d) 856; Driskill v. United States, 281 Fed., 146; Goldberg v. United States, 297 Fed., 98; Francis v. State, 26 Okla. Cr., 82, 221 Pac., 785; that the permission given by the husband to make the search was admissible against the wife.

In Cornelius on Search & Seizure (2d Ed.), pp. 71 and 72, citing many cases, it is said:

"The weight of authority is that a wife has no authority to waive the constitutional rights of the husband."

"It has also been held by the United States Supreme Court that consent to a search by defendant's wife under coercion by officers of the law was not a waiver of defendant's constitutional rights and was illegal."

"The courts almost universally hold that the constitutional right to be immune from unreasonable searches is personal and can not be waived by any one except the defendant himself."

The personal nature of the immunity of a citizen from unreasonable searches and seizures is affirmed in many judicial decisions. See Corpus Juris, vol. 56, p. 1174, sec. 54; also p. 1178, sec. 64.

In the case of Humes v. Taber, 1 Rhode Island, 464, the dwelling house of plaintiff was searched by permission of his wife. The court charged that the authority of the wife to give such permission was implied. On appeal, it was held that the law implies no such authority, the court stating: "Undoubtedly, the wife's authority extends to the rendering of the ordinary civilities of life. If she invites a neighbor, friend, or even a stranger, to enter the house in the way of hospitality, such invitation would, under ordinary circumstances,

be a valid license so to do. But to imply an authority to the extent contended for by the defendant in the present case would be dangerous. * * * It (the doctrine) is unsupported by principle, and would be mischievous in its consequences."

The above quotation is from the case of People v. Weaver, 241 Mich., 616, 217 N. W., 797, applying the principle that the exemption from an unreasonable search of the dwelling was a personal privilege.

In the case of State v. Bonolo (Supreme Court of Wyoming), 270 Pac., 1065, a search warrant possessed by the officers being invalid, they sought to uphold the search of the appellant's premises upon a conversation with the wife of the appellant in which the deputy sheriff told her he was an officer and asked her if she had any objection to their searching the premises. She replied: "No; go ahead; I can't help it." The search was held illegal and the testimony of the officer inadmissible upon the citation of many precedents, including cases from Tennessee, Kentucky, Oklahoma, and the United States Supreme Court, as follows: State v. Peterson, 27 Wyo., 185, 194 P., 342, 13 A. L. R., 1284; Jackson v. State, 153 Tenn., 431, 284 S. W., 356; Coleman v. Commonwealth, 219 Ky., 139, 292 S. W., 771; Hammond v. Commonwealth, 218 Ky., 791, 292 S. W., 316; Derefield v. Commonwealth, 221 Ky., 173, 298 S. W., 382; Taylor v. Commonwealth, 221 Ky., 216, 298 S. W., 685; Matlock v. State, 155 Tenn., 624, 299 S. W., 796; Cole v. State (Okla. Cr. App.), 262 Pac., 712; Cornelius on Search & Seizure, sec. 85. Other cases, including Amos v. United States, 255 U. S., 313, 41 S. Ct., 266, 65 L. Ed., 654, are cited in the Bonolo Case, supra, p. 1067. Many cases hold that the wife is without authority in consenting to a search to waive the constitutional immunity of her husband. See Rose v. State, 254 Pac., 509, and other cases cited in the textbook mentioned.

One who consents to the search of his premises upon the request of officers, disclosing their identity and stating the desire to search the premises, does not waive his immunity. See Cornelius on Search & Seizure (2d Ed.), p. 74, note 69; also p. 76, notes 71 and 72. See, also, Corpus Juris, vol. 56, p. 1184.

In the case of Conner v. State (Supreme Court of Indiana), 167 N. E., 545, a deputy constable, possessed of an invalid search warrant, read it in the presence of the wife of Conner, and she said: "You are welcome to search here. You won't find anything. Come right in."

The language was held not to constitute a waiver of the husband's constitutional rights. The court said:

"But upon the language used by the wife while under the restraint of the writ which had been served upon her, a waiver of the constitutional right, and an invitation to search and seize may not be predicated," (citing Meno v. State, 197 Ind., 16, 164 N. E., 93.)

The search of private premises by an officer without a search warrant or upon a void search warrant cannot be upheld unless it appears that the consent of the owner was freely given or given with full knowledge of his rights and was not given because of the warrant or the official character of the officer. A citizen is not required to resist an officer. See Banfill v. Byrd et al., 84 So., 227, 122 Miss., 288.

Where officers told the defendant that they had a search warrant to search his place for liquor and defendant replied, "all right, white folks; search my house whenever you get ready," he did not give consent to the search or waive the requirements of a valid search warrant. Morton v. State, 136 Miss., 285. The consent under such conditions was not voluntary. The testimony of the officers touching the result of the search was excluded. To the same effect is State v. Watson, 133 Miss., 796; Smith v. State, 133 Miss., 730.

In the case of Buxton v. State, 258 Pac., 814, the Court of Criminal Appeals of Oklahoma, quoting from the opinion of the Supreme Court of the United States in the case of Agnello v. United States, 70 L. Ed., 145, written by Justice Butler, said: "The search of a private dwelling without a warrant is, in itself, unreasonable and abhorent to our laws. Congress has never passed an act purporting to authorize the search of a house without a warrant. On the other hand, special limitations have been set about the obtaining of search warrants for that purpose."

After stating the federal requirements for a search warrant the opinion proceeded further: "And later, to the end that government employees without a warrant shall not invade the homes of the people and violate the privacies of life, Congress made it a criminal offense, punishable by heavy penalties, for any officer, agent, or employee of the United States, engaged in the enforcement of any law, to search a private dwelling house without a warrant directing such search. (Act of November 23, 1921, c. 134, par. 6; 42 Stat. at L. 222, 223; Comp. Stat., sec. 10184a; Fed. Stat. Ann. Supp., 1921, p. 230)."

In the case of Meno v. State, 197 Indiana, 16, the facts were stated in part as follows:

"At the time of the arrival of the officers they found appellant with several men in an upstairs room, some of whom were playing poker. One of the officers informed appellant and the others that they had a search warrant for the search of the premises, to which statement appellant replied, 'All right, go right on. There is nothing about here, go right on and search all you want to.' "

The legality of the search was attacked upon the ground that the search warrant was invalid. The state answered the contention with the claim that the search was with the consent of the accused. Opposing such contention, the court made the following remarks: "An invitation to search one's person or possessions, and seize a person or property under the Constitution, must be free from any coercion, duress, or fraud. One who, upon the command of an officer authorized to enter and search and seize by search warrant, opens the door to the officer and acquiesces in obedience to such a request, no matter by what language used in such acquiescence, is but showing a regard for the supremacy of the law. Such actions do not constitute an invitation."

In the case of Salata v. United States, 286 Fed., 125, the Circuit Court of Appeals, Sixth Circuit, in the third subdivision of the syllabus, is found the following

"A statement by defendant, when a government officer showed him a liquor search warrant, to 'go ahead' with the search, did not waive defendant's constitutional rights, if the search warrant was unlawfully issued, since it is not to be construed as an invitation to search the premises, but rather as a statement of the intention not to resist search under the warrant."

In its opinion, the court said:

"The question here presented is substantially the same question, arising upon practically the same state of facts as the question decided by the Supreme Court of the United States in Amos v. U. S., 255 U. S., 313, 65 L. Ed. 654."

From the case of United States v. Slusser, 270 Fed., 818, first paragraph of the syllabus, the following is taken: "Consent of the owner that a person announcing himself a prohibition agent showing a badge and demanding the right might search premises held not a waiver of constitutional right to protection against unreasonable search."

From the opinion we quote: "The search so permitted by

Slusser, after declaration by the prohibition officer, with a display of his badge, that they were there to search the premises, was not by such consent as will amount to a waiver of constitutional rights, but, on the contrary, is to be attributed to a peaceful submission to officers of the law." ·

From the first subdivision of the syllabus in the case of United States v. Rambert, 284 Fed., 996, the following is taken: "Submission by a citizen to acts of an officer will not be taken as consent to an unlawful search or arrest, nor deprive the citizen of his constitutional rights, unless the evidence clearly shows that the submission was really voluntary, with a desire to invite search," (citing Youman v. Commonwealth, 189 Ky., 152, 13 A. L. R., 1303; Amos v. United States, 255 U. S., 317, 65 L. Ed., 654).

From the case of Duncan v. Commonwealth (Ky. Ct. App.), 250 S. W., 101, the following quotation is taken:

"We have, then, the question whether an officer, who discloses his identity as such, or who is known to be such, may lawfully search the home of one in his absence, by consent or acquiescence of the wife, who is present at the home. For the purposes of this appeal, it is unnecessary to determine whether under any and all circumstances a man's wife, in his absence, may or may not waive his constitutional rights. It is only necessary to decide whether, under the facts and circumstances in evidence, and the coercion to be implied therefrom, there was an effectual waiver upon the part of the wife, so as to authorize the search.

"The case of Amos v. United States, 255 U. S., 313, 41 Sup. Ct., 266, 65 L. Ed., 654, furnishes a complete answer to this inquiry. * * * In response to the argument that the constitutional rights of the defendant had been waived by this action of his wife, that court said: 'The contention that the constitutional rights of defendant were waived when his wife admitted to his home the government officers, who came without warrant, demanding admission to make search of it under government authority, cannot be entertained. We need not consider whether it is possible for a wife, in the absence of her husband, thus to waive his constitutional rights, for it is perfectly clear that, under the implied coercion here presented, no such waiver was intended or effected."

As shown above, the declaration of the United States Supreme Court, quoted from Amos v. United States, supra, has been cited with approval in many cases wherein it has been held that the consent or acquiescence of the wife in the search

of the private residence during the absence of the husband would not render admissible against him the result of the search in a criminal prosecution against him. See Hays v. State (Okla. Cr. App.), 261 Pac., 232; also Carignano v. State (Okla. Cr. App.), 238 Pac., 507.

In the case of Veal v. Commonwealth, 251 S. W., 648 (Ky. Ct. App.), it is said: "This question, in so far as it related to the power of the wife to grant permission to police officers to search her husband's house in his absence, has been decided contrary to the contentions of the commonwealth in the cases of Duncan v. Commonwealth, 198 Ky., 841, 250 S. W., 101; Amos v. U. S., 255 U. S., 313, 41 Sup. Ct., 266, 65 L. Ed., 654; Potowick v. Comth., 198 Ky., 843, 250 S. W., 102; Hart. v. Com., 198 Ky., 844, 250 S. W., 108."

From the case of Gilliland v. Commonwealth (Ky. Ct. App.), 6 S. W. (2d) 467, we quote as follows: "We, however, have held that the consent of the wife of defendant whom the searching officer found in or on the premises of her husband was not sufficient to create imputed consent by the latter so as to bind him and to thereby render the discoveries made by the search competent evidence against him, and some of the cases so holding are Duncan v. Commonwealth, 198 Ky., 841, 250 S. W., 101; Potowick v. Commonwealth, 198 Ky., 843, 250 S. W., 102; and Veal v. Commonwealth, 199 Ky., 634, 251 S. W., 648. The principles announced by all of the cited domestic cases are also sustained by foreign ones and text-writers, and which are cited in our earlier opinions on the questions referred to."

In the instant case, the appellant's wife was a negro woman. The state's witnesses were officers. When the officers came to the home of the appellant, he was in jail, where they had previously placed him. They did not impart this information to the wife but simply said that they wanted to look over the place. She said, "Go ahead." These facts should not be regarded as constituting the waiver of a constitutional right, either of the wife or the husband, but particularly the husband. The officers went to the appellant's home for the express purpose of searching it and were in the wrong in failing to procure a search warrant. Being officers, their statement implied that they had a right to act as such. They had taken the oath of office to obey the Constitution and laws of the state. The Constitution demanded that they make no unreasonable search, and the law commanded that they make no search without a warrant. That they had done these things, it was the right of the wife of the appellant to assume. Upon such assumption

her acquiescence in the search of her home would, in the opinion of the writer, clearly be no waiver of the constitutional right of her husband to immunity from an unreasonable search. That a search obtained under such circumstances is reasonable, we think, cannot be admitted without violence to the letter and spirit of the constitutional inhibition against an unreasonable search. By the law of this state, article 714, C. C. P., 1925, the appellant's wife was forbidden to give evidence against him, and in the opinion of the writer, by article 1, section 9, Constitution of Texas, and article 727a, C. C. P., she was inhibited from furnishing evidence against him by the transaction revealed by the record.

The remark of the appellant's wife should be construed as a mere acquiescence or obedience to official authority. There was no disclosure by the officers of their want of authority to search, and manifestly the implication to the appellant's wife that they had such authority was compelling. The act of the officers brings them within the purview of the declaration of the Supreme Court of the United States in the case of Agnello v. United States, 70 L. Ed., 145, from which the quotation is taken above. The conclusion that the circumstances reflected by the record do not show a consent to the search of the appellant's home which was binding upon him seems supported by the great weight of authority, both by way of writers of textbooks and of judicial expression. Specific support is found in the decisions of the courts of many of the states of the Union of the conclusion that the facts developed in the present record show that the evidence against the appellant was obtained by the search of his home in violation of the Constitution of the United States and of this state and received against the command of the statute of this state, article 727a, C. C. P., declaring that evidence illegally obtained shall not be received. Moreover, in the opinion of the writer, the admissibility of the evidence was condemned by the decisions of the Supreme Court of the United States, notably Amos v. United States, 65 L. Ed., 654, and Agnello v. United States, supra, together with many cases in which the announcements in the cases mentioned have been approved by subsequent decisions, many of which are cited in this opinion.

For the reasons stated herein, I find myself unable to agree with my associates touching the disposition of the appeal, and respectfully enter my dissent from the decision affirming the judgment.

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant has filed a strong motion for rehearing urging that the original opinion of the majority of the court is wrong, it being the position of appellant that only the party affected by the result of the search may give consent thereto, and that a search made by consent of others is as to accused illegal and violative of the Constitutional guarantee against unreasonable searches and seizures.

The near approach of adjournment for the term renders further extended discussion of the question impracticable. There being some difference of opinion regarding the matter among the members of the court, it was given careful consideration originally. That opinions upon the point are not in accord in different jurisdictions is apparent from the decisions. It is further clear, we think, from many opinions written since Amos v. U. S., 65 L. Ed., 654, 255 U. S., 313, was decided in 1921, that the holding in that case has been misapprehended. It has been cited as direct authority supporting appellant's position, when in fact the opinion expressly states in the following language that the question was not considered: "We need not consider whether it is possible for a wife, in the absence of her husband, thus to waive his constitutional rights, for it is perfectly clear that, under the implied coercion here presented, no such waiver was intended or effected." See U. S. v. Ruffner, 51 Fed. (2d) 579.

We adhere to the view expressed originally that the question is not one of a waiver of a constitutional right. The Constitution guarantees against "unreasonable" searches. The real question is thought to turn on whether a search is unreasonable which is made with the wife's consent given without coercion from the officers. Judge Morrow adheres to the views expressed by him in his dissenting opinion.

Believing the majority opinion upon that point to be correct, the motion for rehearing is overruled.

*Overruled.*