## UNITED STATES v. SERGIO et al.
### Cr. 37249.

District Court, E. D. New York.
Dec. 29, 1937.

Leo J. Hickey, U. S. Atty., of Brooklyn, N. Y. (James G. Scileppi, Asst. U. S. Atty., of Brooklyn, N.Y., of counsel), for the United States.

Morris Rappoport, of Brooklyn, N. Y., for defendants.

BYERS, District Judge.

This is a motion to suppress evidence in a case which somewhat resembles United States v. Louis Kaplan, 89 F.2d 869, 870, recently decided by the Circuit Court of Appeals for this circuit. The distinguishing features, however, are significant.

The petition is that of Raymond Beck who recites his residence in the premises in which the still was found, but he does not say that he was present when the agents visited the house on October 23, 1937, shortly after noon. He describes himself as a lawful tenant and occupant of these premises and says that he had a proprietary interest in the property searched, seized and removed (namely, a one hundred gallon still, mash, etc.), but he does not state the source of his information as to what took place.

Attached thereto is the petition of the defendant Sergio, who says that he resided in the premises with his wife at the time in question, and that he was arrested therein "under the circumstances as are more fully set forth in the petition of Raymond Beck hereto attached." He describes his interest in the premises in the same language as that employed by Beck, but does not state the source of his information as to what took place. He does not state that the arrest took place at the time that the search and seizure occurred.

The papers on behalf of the motion were filed on December 15, 1937, and eight days thereafter the affidavit of the agent was filed in opposition, but no reply affidavit or petition has been submitted.

The agent states that on the day in question he proceeded to the premises pursuant to information "received with respect to a violation of the Federal laws pertaining to the Revenues."

The premises consist of a one-family frame dwelling located on 150th Place, Flushing, Long Island, and the photograph attached to the papers indicates that the dwelling comprises two stories and an attic; there is a driveway at one side leading to the rear entrance; the latter consists of a stoop, four steps high, and a rear door having glass panels as to the upper half.

The agent deposes that he obtained a strong odor of fermenting mash which became increasingly pungent upon his more immediate approach, and that he circled the house and observed, through the door panel, five one hundred pound bags of sugar marked "brown sugar" and three bags of coke, on the floor of the kitchen. His affidavit continues, that he knocked "at the door of the premises and was greeted by a woman now known as Mrs. Sergio. Whereupon, deponent immediately notified her of his official position and that he knew that a still was in operation in these premises. Mrs. Sergio, the wife of the deponent Jack Sergio, professed ignorance on her part with respect to the operation of any distillery in the premises and invited deponent to come in and look around if he cared to. Deponent accepted the invitation and in-

formed Mrs. Sergio that he would have to place her under arrest. Upon proceeding to the attic from whence there emanated a strong and distinctive odor of mash, deponent found a one hundred and fifty gallon still in operation, together with a quantity of mash, which still was being operated by the above-named defendants. Deponent thereafter placed the said defendants under arrest."

Since the foregoing affidavit is uncontradicted, it becomes apparent that Mrs. Sergio was in charge of the residence, while her husband and the other defendant were operating that portion of the structure which was used as a distillery, and since the fact is not denied that she invited the inspection, it follows that she was sufficiently in charge of the house to render her invitation legally sufficient to constitute an actual consent to the search.

In this respect, the case differs from the Kaplan Case, supra, in which the opinion states: "Nobody pretends that their search of the premises was by permission of the wife, who lived with her husband on the ground floor."

A further distinction resides in the observation made through the glass panel of the rear door above referred to. Common sense teaches the court, as it did the agent, that the ordinary householder does not use five one hundred pound bags of sugar labeled "brown sugar" in purely domestic pursuits; nor is coke ordinarily dumped on a kitchen floor.

The conditions so disclosed are thought to supply, when coupled with the odor of fermenting mash, the element necessary to constitute probable cause in this case as distinguished from the Kaplan Case.

The reasoning is not obscure. It may be assumed that, if an agent could actually see a still in operation through a window or a doorway, even the most meticulous deference to the Fourth Amendment to the Constitution would not require that the agent procure a search warrant before making an entry and search; it is believed that the same reasoning applies where what can be seen is that without which the still could not perform its function, the activity of the still having already been made apparent through the exercise of the olfactory processes.

It is to be recalled that constitutional protection is against *unreasonable* search and that, while the search of a dwelling is usually presumed to be unreasonable, that presumption must yield in the presence of a condition of such grave potentialities as the residential operation of a still, because, while the agent might be absent for hours seeking a search warrant, the still might blow up and cause damage to property and perhaps endanger life. Instances of such happenings are not infrequent, according to experiences recorded in the daily press.

It is thought that the test of whether a search is unreasonable cannot be a constant. What may be unreasonable, when the mere presence of narcotics is suspected, may not be unreasonable when it is apparent that such an engine of destruction as an illicit still is in operation in a dwelling house, because, in construing the word "unreasonable" under such circumstances, the court is required to bear in mind that the community has some right to look to the law for protection against combustible and explosive hazards in residential neighborhoods.

Motion denied. Settle order.