### UNITED STATES v. MARYLAND BAKING CO. et al.

### Cr. No. 18189.

United States District Court
N. D. Georgia, Atlanta Division.

Sept. 29, 1948.

J. Ellis Mundy, U. S. Atty. and W. Guthrie McCullough, Asst. U. S. Atty., both of Atlanta, for respondent.

Allen E. Lockerman, of Atlanta, Ga., for movants.

RUSSELL, District Judge.

A criminal information is pending in this Court naming Maryland Baking Company, a partnership, and Sara Piem, an individual, as defendants, in which is charged a violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 et seq. The partnership and individual have moved the return of certain seized property and for the suppression of evidence alleged to have been seized and secured as the result of an unlawful search. A hearing has been had at which oral testimony was received concerning the circumstances of the inspection and seizure.

The material facts are as follows: On September 23, 1947, two agents of the Food and Drug Administration went to the plant of the partnership and asked to see the manager, who is Miss Piem. She was engaged in a conference and the agents thereupon asked for the next in authority

and were directed to Mr. Lampe who is the plant superintendent, and thereupon found him on another floor of the building. The evidence is conflicting as to exactly what conversation was had. Miss Piem is the manager of the plant and in charge of all of its operations, representing the members of the partnership, who take no part in the management of the business. Lampe is concerned only with the supervision of the building and the production of the plant, all of his authority, with the exception of the power to discharge employees, being exercised under the over-all supervision of Miss Piem. Upon the agents meeting Lampe in the bake room of the plant, they testify that they made their official position known and stated that they wished to make an inspection and that he replied in substance "all right" or "go ahead," and thereafter went through the plant with them, cooperating in the inspection. Lampe denies that any request was made or any consent given, and from the evidence the Court finds that he gave no consent but merely assumed that the officers had the right to inspect and offered no objection. However, under the view the Court takes of the law, the question of Lampe's consent is immaterial.

After some two-hour inspection, one of the agents went to the office on the lower floor and saw the manager and received certain information as to the destination of the shipments of the plant, after informing her that he had made an inspection. The manager stated that she was entitled to the courtesy of being requested the permission to enter the plant and asked that this be secured. Two days later, on September 25th, the agents again returned to the plant and one stopped by the office to secure permission to enter, but the other, however, had already entered the plant and begun a continuation of the inspection. At a later time, the date being somewhat uncertain, but probably September 28th, a continuation of the inspection was had, but no express permission was given or requested of Miss Piem, the manager.

In the course of the inspection, various samples of the batter and flour and finished products were secured and pictures made of a portion of the premises.

Miss Piem, the manager, had never granted to Lampe, the plant foreman, or superintendent, authority to admit anyone to the plant and permission from her to enter the plant was never formally requested or secured by the agents.

Under these facts, the question presented is whether the inspection was lawfully conducted within the terms of Title 21 U.S.C.A. § 374 which provides for and regulates such inspections. In the application of the statute in this case, we have on the one hand the necessity for not unduly impeding the valuable work of the Food and Drug Administration, and on the other hand, the maintenance of the legal rights of the defendants. The statute provides: "For purposes of enforcement of this chapter, officers or employees duly designated by the Administrator, after first making request and obtaining permission of the owner, operator, or custodian thereof, are authorized (1) to enter, at reasonable times, any factory, warehouse, or establishment in which food, drugs, devices, or cosmetics are manufactured, processed, packed, or held, for introduction into interstate commerce or are held after such introduction, or to enter any vehicle being used to transport or hold such food, drugs, devices, or cosmetics in interstate commerce; and (2) to inspect, at reasonable times, such factory, warehouse, establishment, or vehicle and all pertinent equipment, finished and unfinished materials, containers, and labeling therein." Counsel for the defendants, movants, predicates his argument largely upon the constitutional prohibition against unreasonable searches and seizures. However, as it is concluded that the inspection did not comply with the terms of the statute, it is unnecessary to consider any constitutional question. So far as the present case is concerned, the critical words are that the employees designated by the Administrator "after first making request and obtaining permission of the owner, operator, or custodian thereof, are authorized (1) to enter, at reasonable times * * * and (2) to inspect, at reasonable times, * * *." It is difficult to conceive how a procedure could be any more definitely spelled out than by the language quoted. The first step must be the making of a request, and there

must be obtained the permission, the formal consent of the owner, the operator, or custodian of the factory, etc. Under the evidence in this case, Miss Piem was the operator and custodian. She was present and this was known to the agents. When present, she was the proper person of whom to first request and obtain permission for the inspection, and under the circumstances was the only one authorized to give permission for inspection, the results of which might (and did) subject her and the partnership, for which she was the alter ego, to criminal prosecution. It is recognized that such beneficial legislation as the Federal Food, Drug, and Cosmetic Act is entitled to a liberal construction to maintain standards of health and purity in articles of food and drugs. However, the defendants are entitled to insist upon compliance with the statute.

The strict requirement of section 374, supra, is emphasized by examination of the provisions of the statute as a whole. Thus, in section 373, making provision for the inspection of the records of interstate shipments by carriers and persons receiving food in interstate commerce, they are required merely "upon the request of an officer or employee duly designated by the Administrator" to permit access to and copying of records showing the movements of such foods, drugs, etc., in interstate commerce. In such an instance the statute provides the "permission," but further provides that the evidence "obtained [thereby] shall not be used in a criminal prosecution of the person from whom obtained". The restriction of conduct expressed by the words of section 374, supra, considered in their ordinary meaning, become even more evident when the formal and prohibitory provisions of the statute contained in section 331(f) of Title 21 U.S.C.A. are considered. By this subsection, "The refusal to permit entry or inspection as authorized by section 374" is prohibited and the commission of a prohibited act is by section 333 made a misdemeanor punishable by imprisonment for not more than one year or a fine of not more than $1,000.00, or both such imprisonment and fine, for the first violation, and for not more than three years or a fine of not more than $10,000.00, or both such imprisonment and fine, upon a second conviction. It therefore becomes readily apparent that the words "owner, operator, or custodian," must have a definite and fixed meaning in the statutory scheme of enforcement, for they thereby become a part of the enforcement of the statute by criminal prosecution. It may be that constitutional questions lurk in the background of subparagraph (f) of section 331, supra. If so, they may be reserved for another day and another case, and in any event, they would not weaken the aid given to the determination of the congressional intent as to the meaning of the words "owner, operator, or custodian."

It is clear that Lampe was neither the "operator, or custodian" of the plant, and likewise clear that under the circumstances Miss Piem was. Since the agents did not comply with the requirements of the statute by first requesting and obtaining permission from her, the inspection was not within the terms of the statute, and the evidence secured as a result thereof was illegally secured. In this criminal prosecution she is entitled to assert for herself and the partnership she represents, the illegality of the evidence so obtained. It is undisputed that the several inspections were all a continuation of the initiatory one of September 23rd, which it is here determined was illegal.

The motion for the suppression of the evidence in this criminal prosecution should be, and the same hereby is, sustained, and such evidence declared inadmissible in the trial of the criminal prosecution against the partnership and individual defendant.

No sufficient identification of the articles seized was presented by the evidence to support direction that they be returned.