**UNITED STATES of America,**
**Appellee,**

v.

**William Leroy ELDRIDGE, Appellant.**

**No. 8435.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 3, 1962.

Decided April 20, 1962.

Leonard B. Sachs, Glasgow, Va. (Court-appointed counsel), for appellant.

Roger T. Williams, Asst. U. S. Atty. (C. V. Spratley, Jr., U. S. Atty., on brief), for appellee.

Before SOBELOFF, Chief Judge, and BOREMAN and J. SPENCER BELL, Circuit Judges.

SOBELOFF, Chief Judge.

William Leroy Eldridge appeals from his conviction on a charge of stealing two radios (handie-talkies), the property of the United States Coast Guard, in violation of 18 U.S.C.A. § 641. The principal question for decision is whether the stolen articles, seized by state police officers from the trunk of Eldridge's car, were properly admitted in evidence.

On April 1, 1961, Eldridge, a member of the Coast Guard stationed at Norfolk, and his service buddy, Nethercott, were given liberty, and they drove in Eldridge's car to Elizabeth City, North Carolina. The following day Nethercott obtained Eldridge's permission to use the car to take his young daughter, who lived in Elizabeth City, for a ride around town. The keys to the ignition and trunk were given to him.

That afternoon local police officers received a message from Nethercott's mother-in-law that there was a stolen rifle in the back seat of the car which was then parked in front of her home. There had been several recent thefts of firearms in the area and the police went to investigate. After looking through the car window and seeing a rifle partly uncovered on the back seat of the car, they left to secure a search warrant. On returning, they called Nethercott from the house, asked him about the rifle and sought his permission to look at it. This granted, they asked if they might search the car further. He opened the glove compartment where a pistol and a knife were found. However, as far as the record shows, none of the weapons was stolen property.

In the trunk of the car, which Nethercott voluntarily opened, the officers found and seized the two stolen Coast Guard radios, which they later turned over to federal authorities. The warrant authorizing a search was not served or shown to Nethercott, apparently because it was thought that his willing cooperation made the warrant unnecessary. The foregoing facts are not in dispute.

At trial, Eldridge moved under Rule 41(e), Fed.R.Crim.P., 18 U.S.C.A., to exclude the radios from evidence, claiming that they had been taken in violation of the Fourth Amendment. Specifically, he contended that the search was unlawful because it was conducted without his consent, without a warrant, and not incident to a lawful arrest. Essentially his contention is that the protection of the Fourth Amendment is a personal right that could not be waived for him by Nethercott, a gratuitous bailee of the car. The District Court denied the motion on the grounds that the state officers acted upon probable cause and that the search was not of the general exploratory type condemned in United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932).

■ On the preliminary question of Eldridge's standing to seek suppression of the evidence, we have no doubt. Although he was temporarily out of possession of the car at the time of the search, the bailment was to be of short duration. It would be hyper-technical to say that he lacked a sufficient interest in his own car to challenge the manner in which the radios he has been found guilty of steal-

ing were taken from it. See Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Also, since the "silver platter" doctrine has been authoritatively repudiated, our decision is unaffected by the fact that the radios were seized by state rather than federal officers. Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

■■ On the merits of the constitutional issue we agree with the result reached by the District Court. Not every search made without a warrant is illegal.[1] The Fourth Amendment prohibits only "unreasonable" searches and seizures.[2] Such decisions as have been cited to us or discovered by research have only a peripheral bearing on the question to be decided in this case. Lower federal courts have deemed searches reasonable if consented to by the person in lawful possession of the articles seized, or the premises on which they are found, as where the defendant's partner consented to a search,[3] where an office manager in sole control of the office and the corporate records consented to the search and seizure,[4] where the owner-occupant of a house consented to search of the living room in which the defendant customarily slept on a couch,[5] where the wife of the defendant consented to a search of their home,[6] and where an owner consented to a search of his garage and the article seized, which had been stored there by the defendant, was not packaged[7] or otherwise concealed. These decisions do not furnish particularly helpful guides to the answer to the precise question raised here, namely, whether the bailor's constitutional immunities were violated in the search consented to by his bailee.[8]

The appellant mistakenly contends that the recent case of Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed. 2d 828 (1961), supports him. That case is not analogous to this, for here consent was given by the bailee in actual lawful possession of the car, and it is the bailor who claims that his constitutional rights were violated by the search. If Chapman sheds any light whatever on the question that concerns us here, it is possibly in the indication it gives that authorization of the search may come from a person in actual lawful possession, and that his rights may not be waived by an owner who has the right to reclaim possession, but has not done so.

Nethercott's right to possession of the vehicle was less formal or durable than

1. See United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951).

2. See generally Anno., 31 A.L.R.2d 1071, 1078–96 (1953).

3. United States v. Sferas, 210 F.2d 69, 74 (7th Cir. 1954); United States v. Goodman, 190 F.Supp. 847, 850 (N.D.Ill. 1961).

4. United States v. Antonelli Fireworks Co., 155 F.2d 631, 636 (2d Cir. 1946); cf. United States v. Maryland Baking Co., 81 F.Supp. 560 (N.D.Ga.1948).

5. Fredricksen v. United States, 105 U.S. App.D.C. 262, 266 F.2d 463 (1959); cf. Woodard v. United States, 102 U.S.App. D.C. 393, 254 F.2d 312 (1958).

6. Stein v. United States, 166 F.2d 851, 855 (9th Cir. 1948); United States v. Pugliese, 153 F.2d 497, 499 (2d Cir. 1945) (dictum); Driskill v. United States, 281 F. 146 (9th Cir. 1922); United States v. Sergio, 21 F.Supp. 553 (E.D.N.Y.1937); but see, Cofer v. United States, 37 F.2d 677, 679 (5th Cir. 1930). The Supreme Court, in Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921), expressly left this question open. For an interesting discussion of the early cases, see Cass v. State, 124 Tex.Cr.R. 208, 61 S.W.2d 500 (1933).

7. Cutting v. United States, 169 F.2d 951, 12 Alaska 143 (9th Cir. 1948). See also, Von Eichelberger v. United States, 252 F.2d 184 (9th Cir. 1958); Reszutek v. United States, 147 F.2d 142 (2d Cir. 1945).

8. The recent case of Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed. 2d 668 (1960), is not apposite on the facts. Its holding that search of a hotel room several hours after a guest had vacated it was reasonable, where made with the consent of the hotel manager, appears to be consistent with the notion that possession and control is the touchstone in determining validity of consent.

that of the tenant Chapman to occupancy of the house under his lease. Still, for the time being Nethercott was clothed with rightful possession and control and could do in respect to the automobile whatever was reasonable and not inconsistent with its entrustment to him. No restriction was imposed on him except to return with the car by a certain hour. Although the defendant knew of the presence of the stolen radios in the trunk, he apparently did not think it worthwhile to take the precaution of forbidding his bailee to open the trunk or permit anyone to look into it. He reserved no exclusive right of privacy in respect to the trunk when he delivered the key. In responding as he did to the police, Nethercott did not exceed the authority Eldridge had seemingly given him. Using the key to open the trunk was not an unwarranted exercise of dominion during the period of his permissive possession and use. Access to the trunk is a normal incident to the use of an automobile. And if, when he voluntarily opened the trunk, Nethercott did not exceed proper bounds because he had to that extent at least concurrent rights therein with Eldridge, was the ensuing search by the police unreasonable? We think not.

Had the police done more than look with Nethercott's consent into the trunk and observe what was readily visible and not covered over or concealed in package or wrapper—if, for example, they had explored under the floor carpeting or behind the upholstery—we might have a different case. United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932); United States v. Kirschenblatt, 16 F.2d 202, 203, 51 A.L.R. 416 (2d Cir. 1926). There is no suggestion that Nethercott obtained possession of the car with any deceptive purpose against Eldridge or in collusion with the officers.

Conscious of our duty to maintain jealously the constitutional standards of the Fourth Amendment in criminal prosecutions, and to be on guard against the excesses of overzealous officers, we nevertheless must recognize that some searches may be so eminently reasonable as not to fall under the interdict of the Amendment. Upon consideration of the circumstances we conclude that the bailee's consent made this a reasonable search.

In light of this conclusion we do not reach such questions as whether the officers had adequate grounds for a lawful search apart from the bailee's consent,[9] or whether an unexecuted warrant may have the potency to vitalize an otherwise illegal search.[10] Nor do we reach Eldridge's further contention that the confession given by him to the federal authorities was excludable as the "fruit" of an illegal search and seizure.

Affirmed.

BOREMAN, Circuit Judge (dissenting).

Preliminarily, of course, I agree with the holding of the majority that Eldridge had "standing" to seek suppression of the seized evidence under Rule 41(e), Federal Rules of Criminal Procedure. I do not agree with the conclusion that the Rule 41(e) motion to suppress the seized evidence was properly denied.

Like my brethren, I begin with the premise that the Fourth Amendment prohibits only *unreasonable* searches and seizures. It is well recognized, however, that, as a general rule, whether there is reasonable ground for the search is to be determined prior thereto by an impartial official authorized to issue warrants, not by a police officer who may be overzealous in the performance of his law enforcement duties. Jones v. United States, 362 U.S. 257, 270–271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) (dictum); Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948); United States v. Lefkowitz, 285 U.S. 452, 464, 52 S.Ct. 420, 76 L.Ed. 877 (1932).

9. Cf. Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948).

10. Cf. Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958).

A search is unreasonable within the meaning of the Fourth Amendment unless (1) authorized by a valid search warrant, (2) incident to a valid arrest, or (3) is made in other exceptional circumstances which dispense with the need for a search warrant. Williams v. United States, 105 U.S.App.D.C. 41, 263 F.2d 487, 488 (1959), and cases there cited.

In the case at bar the search of Eldridge's car was not authorized by a valid search warrant though the Government does not rely upon the timeworn excuse that the police did not have the time or opportunity to procure a warrant. Rather, the police chief testified that he did secure a warrant to search the automobile based upon certain information that a gun had been seen in the car and guns had been stolen in that vicinity. But the warrant, if obtained and in the possession of the officer, was not executed and there is no contention that the search was made pursuant to a valid warrant. Furthermore, there was no arrest, lawful or otherwise, at the time of the search and consequently the authority for a search based upon United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), as incident to a lawful arrest is absent.

The Government seeks to validate the search and the use of the seized evidence against Eldridge by Nethercott's consent to the search. Of course, it is conceded that where a *defendant* gives consent to a search of his own property (whether owned, rented or otherwise occupied or controlled), the need for a search warrant is obviated. An entirely different question is posed where the police rely upon the consent of one person to validate a search in the course of which evidence is seized and later used against another person having standing to seek suppression of the evidence but who did not consent to the search. The issue then is whether the person against whom the evidence is to be used in a criminal prosecution is to be bound by the consent of another to the search.

The majority opinion cites a number of cases [1] in which the consent of one person has been held to be binding upon another, but in that opinion it is admitted that those cases are inapposite here.[2] In each of those cases there was either a strong degree of privity between the person consenting to the search and the person against whom the seized evidence was used, or the latter had virtually no interest in the searched property. Such privity as existed between Nethercott and Eldridge was slight in degree and was not comparable to that existing between husband and wife, or partners, or a corporation and its office manager. Certainly it cannot be denied that Eldridge had considerably more interest in the searched property than did Nethercott. Considering the nature and degree of the relationship existing between Nethercott and Eldridge, the brief period during which Nethercott was permitted by Eldridge to use the car, and the limited purpose (to enable Nethercott to take his daughter for a drive) for which the car was left with Nethercott, it is my view that Eldridge did not intend to confer authority upon Nethercott to consent to a search of the car, nor is there any reasonable basis for the assumption that Nethercott had implied authority to consent to the search on behalf of Eldridge. It seems to me entirely unreasonable to infer, as does the majority, that Nethercott's temporary possessory right of short duration, less than 24 hours and for a specific, restricted purpose, carries with it the implied authority to permit, on behalf of Eldridge, a police search without a warrant. An agent's authority is derived, either expressly or by implication, from his principal. The majority opin-

---

1. Footnotes 3 through 7.

2. My colleagues apparently rely to some extent on Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), and Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), while at the same time conceding that the cases are factually inapposite. I do not think the inferences drawn by the majority from those two decisions are proper and certainly they are not compelled.

ion, however, expresses a contrary idea that "agent" Nethercott had implied authority to act with respect to Eldridge's automobile in any manner not expressly forbidden him by Eldridge as long as the car was returned to its owner by a certain hour. Customarily, a principal does not have to explicitly reserve unto himself the right to act solely on his own behalf unless his agent or a third person dealing with the agent might *reasonably* infer from a grant of authority that the principal was conferring that which he actually intended to reserve. As before indicated, I do not think authority to consent to a police search can be remotely "implied" from a grant of permission to use a car for such a short time and such a limited purpose.

The Fourth Amendment protects all, those suspected to be offenders as well as the innocent. In the case at bar, the record shows that the police chief told Nethercott the search was "just a routine checkup" and did not mention any of the matters urged by the Government as constituting probable cause for the search. Had Nethercott known that the police expected to find stolen goods in the car perhaps he would not have been so free in consenting to the search. The warrant purportedly obtained by the police chief was neither shown to Nethercott nor mentioned to him at the time of the search. It is not in the record, and we do not know who issued it or upon what information or whose sworn complaint it was issued. From the only available information it is questionable whether there was probable cause even for the issuance of a warrant, for a search warrant is not properly issued on the mere suspicion of some wrongdoing. Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933); see Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). There is no showing that either the police chief or Nethercott's unfriendly mother-in-law had any ground to believe that the specific weapons in Eldridge's car had been stolen and, of course, they were not stolen. Except for Eldridge, no one knew

of the "handie-talkies" in the trunk until they were found there by the police chief in what he said was just a routine check-up. This search was an exploratory one, made solely in the hope of finding stolen guns in a particular automobile. But the search disclosed other property concerning which the officers had no information and which they seized upon the mere suspicion that the radios *might* be stolen. "There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." Go-Bart Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 158, 75 L.Ed. 374. The record does not reveal any "exceptional circumstances" to justify this search and seizure.

I think the District Court erred in denying the motion to suppress.