RAYMOND CARL BROWN V. STATE.

No. 25012. December 6, 1950.
Rehearing Denied January 10, 1951.

348

*Frank Ivey*, and *A. S. Baskett*, Dallas, for appellant.

*Will R. Wilson, Jr.*, Criminal District Attorney, *Tom Farmer*, Assistant District Attorney, Dallas, and *George P. Blackburn*, State's Attorney, Austin, for the state.

GRAVES, Judge.

Appellant was charged with the offense of robbery and upon his conviction therefor he was given a term of twenty years in the state penitentiary. He appeals.

The state's testimony shows that on December 21, 1949, appellant and a companion, Ras Duke Hardy, entered the Safeway Store No. 124 in Dallas, Texas, and at the point of a pistol, they compelled an employee to open the safe and turn over to them $6,870.00 in money with which they fled, leaving two of the employees on the floor in fear of their lives. This took place about 9:20 o'clock at night, just as these employees were closing up the store. Two days thereafter Hardy was taken into custody in Dallas, and appellant was soon apprehended in San Antonio and charged herein. The two witnesses who were robbed positively identified appellant as one of the robbers, and Ras Duke Hardy as the other.

Bill No. 3 relates to proof that an automobile with a license No. FD 2958 was found two days after this alleged robbery in front of a certain house in Dallas, where a Mrs. Brown resided; that this house was searched by the officers and therein was found $1098.00 hidden inside a double door of a refrigerator; that while they were in such house, Ras Duke Hardy drove up in the automobile containing license No. FD 2958, and he was there taken into custody, and the $1098.00 was also taken in charge by the officers. This lost money consisted of $20s, $10s, $5s, and $1s. The money taken in the robbery had no $20s, but did consist of $10s, $5s, and $1s.

The cause for the officers tracing the automobile with license No. FD 2958 was that they had been told by two witnesses that such numbered automobile had been used in a further robbery of a Safeway Store two days after the present Safeway robbery.

The bill complaining of the introduction of this testimony is multifarious and cannot be considered. See Miller v. State, 151 Tex. Cr. R. 539, 209 S. W. (2d) 603; Granado v. State, 154 Tex. Cr. R. 519, 228 S. W. (2d) 530; Middleton v. State, 86 Tex. Cr. R. 307, 217 S. W. 1046. However, the bill in question reads as follows:

"Now comes the defendant Raymond Carl Brown and requests that the following testimony which is improperly before the jury be stricken from the record and the jury be instructed to disregard the same:

"That this defendant owned or had possession of a certain automobile with License No. FD 2958 because no automobile was connected with the robbery Dec. 21, 1949, because the title certificate is the best evidence and was never produced; because no witness testified that the defendant had ever been seen in said automobile. The witness Baker testified that said automobile had been used in another robbery (while the jury was retired) but not on Dec. 21, 1949. Baker had obtained this information from 2 boys and it was hearsay.

"That $1090.00 or more cash (currency) was found in the 2500 Block W. Davis St., Dallas, Texas, in a tourist court, because it was never shown, except by hearsay that the defendant ever lived there, because the defendant was not there at the time of the search and further because defendant's so called wife was present and it was never proved that such person was defendant's wife or that defendant had any wife; further said officers did not have a search warrant."

We are of the opinion that much, if not all, of such testimony was admissible for what it might have been worth to the jury, and not having singled out the objectionable testimony, the bill fails to show error.

The state's testimony is clear that appellant and Hardy were acting together in the commission of this alleged offense; that Hardy was found in possession of an automobile belonging to appellant, and that a large sum of money was concealed in the house where Hardy was apprehended. It is true that it was not shown that this lady who occupied this house was appellant's wife, nor was it shown that she was Hardy's wife, but she was shown to be named Mrs. Brown. If this was appellant's residence, he did not show such in the proof; but upon the motion for a new trial he testified at length, and never did he say that this searched place was his home or that the lady at such place was his wife. Under these circumstances, we find no objection

to such testimony, but merely find a request that this testimony be stricken from the record after the same had been heard. We are of the opinion also that the actions of the co-conspirator Hardy would be admissible against appellant as long as the purposes of the conspiracy remained, such as a division of the property received in the robbery. This is a motion to strike out certain testimony and not an objection thereto. This motion should have been made at the time same was offered or given. See Middleton v. State, 86 Tex. Cr. R. 307, 217 S. W. 1046.

Bill No. 3 was qualified by the court, and it is shown therein that the lady who was present at the place where this money was found invited the officers to come in and consented to the search. This bill shows that appellant testified on the hearing of the motion for a new trial, but nowhere therein did he admit that this address where the money was found was his home. Under the doctrine laid down in Bannister v. State, 112 Tex. Cr. R. 158, 15 S. W. (2d) 629, either spouse could give consent to a search of the premises, thus legalizing such search. See Cass v. State, 124 Tex. Cr. R. 208, 61 S. W. (2d) 500; Ellis v. State, 130 Tex. Cr. R. 220, 93 S. W. (2d) 438. If such place was appellant's home, then the wife's consent authorized the search; but if not his house, then he had no right to complain of the search.

Bill No. 4 is a resume of practically all the testimony and mainly a rehash of Bill No. 3, and attempts to bring into one bill many of the objections taken to much of the testimony heard by the jury. Suffice it to say, that we find no error therein shown without a re-statement of such complained of errors.

Bill No. 5 seems to refer to appellant's motion for a new trial. Appellant did not take the stand on his trial, but on the motion for a new trial he attempts to show in this bill that he requested his attorney at such trial to subpoena one Dale Tyler, whom he claimed looked a good deal like appellant, and that his then attorney failed to thus subpoena Tyler. Appellant contended that Tyler was with Ras Duke Hardy at the time and place of this alleged offense; that the said Tyler, if present, could have testified to an alibi for appellant had his attorney properly and timely applied for a subpoena for him; that such Tyler had been removed from the state and the jurisdiction of the court at the time of the hearing of the motion for a new trial. It is shown by the bill's qualification that no subpoena was ever requested herein, nor was Tyler's presence ever mentioned until the motion for a new trial was heard in this cause.

The bill itself reads peculiarly at least. It first seems to suggest that Tyler and Hardy were the men concerned in the robbery, and then further suggests that if Tyler were present, he could aid in proving an alibi for appellant. In any event, no process was asked for Tyler and none requested until the hearing of the motion for a new trial on April 29, 1950, whereas the trial was had on April 3, 1950.

Finding no error in the record, the judgment will be affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant has filed a motion for rehearing, in which he challenges the correctness of the conclusion reached originally. No new matter is presented, or urged.

We have again reviewed the entire record, and remain convinced that a correct conclusion was reached originally.

Appellant's motion for rehearing is overruled.

Opinion approved by the court.